Case No. 7,334.

The JOHN BRAMALL.

[10 Ben. 495.] [1]

District Court, E. D. New York. June 21, 1879.

Butler, Stillman & Hubbard, for libellants.

Robinson & Scribner and R. D. Benedict, for Winchester Arms Co. and others.

Scudder & Carter, for Atlantic Mutual Ins. Co. and others.

BENEDICT, District Judge. This is a proceeding to obtain at the hands of this court a limitation of the liability of the owners of the steamer John Bramall, for losses caused by the stranding of that steamer at Little Gull Island, on the 18th day of October, 1878.

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

to the value of said vessel and her freight.

The libel avers, among other things:

That at the time of the said stranding the steamer was bound on a voyage to Constantinople, Turkey, with the following cargo, to wit: 15,790 cases of shells, 10,500 cases of bullets, and 3 boilers with 35 pieces of fixtures, all shipped by the Winchester Repeating Arms Company, of New Haven, Connecticut, to be delivered to order at the said port of Constantinople; and 1,604 cases of guns and 840 cases of sabre bayonets, all shipped by the Providence Tool Company of Providence, Rhode Island, to be delivered to order at the said port of Constantinople. That there were no passengers on board the said steamer, and she carried no cargo except that hereinbefore mentioned.

That at the time of stranding as aforesaid, and in consequence thereof, the steamer immediately filled with water. That the master secured the assistance of experienced wreckers to save the said cargo and steamer, and caused the greater portion of the cargo shipped by the Winchester Repeating Arms Company to be transported from the steamer to New London and to be there stored, and delivered the cargo shipped by the Providence Tool Company to the owners thereof.

That afterwards, on the 4th day of February, 1879, that portion of the cargo shipped by the Winchester Repeating Arms Company was claimed by the owners thereof, and was delivered to them. That no freight has been paid or demanded for the carriage or transportation of any of the goods before mentioned. That the means adopted by the master for the preservation of the cargo were prompt and efficient, but that, nevertheless, the said cargo was, as your libellants believe, greatly damaged. That all endeavors to save the said steamer were unavailing, and she never finished her voyage, but remained where she stranded, and finally broke to pieces and became a total wreck, though some of her tackle and furniture was, by the exertion of the master and crew, assisted by the said wreckers, saved and safely landed in this district, where it now is.

That no claim has been made against the said steamer or against the libellants for damages occasioned by the said stranding, and the libellants do not admit that any just claim for damages from the shippers or owners of the said cargo, or from any one, exists against them or the said steamer by reason thereof, but allege that the said damages; if any there were, were occasioned solely by the dangers and perils of the seas and navigation, and not by the fault or negligence of those in charge of and navigating the said steamer; and they further allege that whatever loss, damage or destruction of any of the said property, goods or merchandise shipped or put on board of said vessel, or whatever loss or damage has been done, occasioned or incurred by reason of the stranding and wreck aforesaid, has been done, occasioned and incurred without the privity or knowledge of the libellants and petitioners, or any of them.

That as the libellants are informed and believe, by the general maritime law and by sections 4283 and 4284 of the Revised Statutes of the United States, their liability, if any, for loss, damage or injury by reason of said stranding is limited to their interest in the said steamship and her freight, and that upon their surrendering the said vessel, as she lies, and the freight earned, or giving stipulation for the value thereof in this court, they are entitled to the benefit of the law limiting their liability as aforesaid, and to this end the libellants offer and tender such stipulation as to this court shall seem fit.

Wherefore the libellants pray that in case it should be hereafter found that there is any liability upon the part of said steamship or upon the libellants as owners thereof for damages occasioned by the stranding and wreck aforesaid, which liability they do not in any manner admit but expressly and wholly deny, that they may have the benefit of the aforesaid limitation of liability under the general maritime law, and also of the limitation of liability provided for in and by sections 4283 and 4284 of the Revised Statutes of the United States, and that the total amount of such liability, if any, and of any recovery which can be had thereon, shall not exceed the amount or value of the interest of the libellants as owners in said steamship at the time of said loss and in her pending freight:

And that this court would make an order for the sale of said steamship or for the appraisement of the amount or value of the interest of the said libellants in said steamship at the time of the loss and damage aforesaid, and in her pending freight, and for the payment of such amount into court, or for the giving of a stipulation with sureties for the payment thereof into court whenever the same shall be ordered, and will otherwise order and direct what shall be done by the libellants in this suit in order to secure and have the benefit of the law limiting their liability as in this libel alleged, according to the maritime law and the course of proceedings of courts of admiralty; and upon compliance by the libellants with such order, that a monition may be issued against all persons claiming any damages or any recovery against said steamship or her owners, citing them to appear before this court and make due proof of their respective claims and the amount thereof, if any such claims they have, at or before a certain time by this court to be named in said writ, and that such further notice be given as this court may direct, and if any liability be found to exist, the court would apportion the sum for which the libellants may be liable among the parties entitled thereto, and that an order may be made to restrain the prosecution of all and any suit or suits against said libellants or against said steamship in respect of any such claim, as is provided by the rules and practice in admiralty; and that

the libellants may have such other and further relief as to this court shall seem meet, with costs to be taxed.

Upon the filing of the libel an order was made as follows:

"On reading and filing the libel and petition of the Royal Exchange Shipping Company (Limited), Samuel Lucas, George Bassett, James Marsden, J. Nicholson, Edward Lucas, W. Mercer, Tobias Smith, M. H. Nicholson, David Ward, I. Howard and Samuel Cocker against the British steamer John Bramall, her engines, boilers, tackle, apparel, furniture and freight, and against all persons intervening for their interest, in a cause of limitation of liability, civil and maritime, setting forth among other things, that by reason of the facts and circumstances stated in said libel and petition, and by the general maritime law, and by the statutes of the United States, they are entitled to and claim the benefit of limitation of liability for the loss, damage or injury arising from the stranding of the said steamer John Bramall, on Little Gull Island, on the 18th day of October, 1878, and sustained by the shippers or owners of the cargo laden on said steamship, or by any one else, and praying this court to cause an appraisement to be had of the amount or value of the interest of the said libellants respectively in said steamship at the time of the said loss and damage referred to in said libel, and in her pending freight; and for the payment of such amount into court, or for the giving of a stipulation with sureties for the payment thereof into court whenever the same be ordered: and to otherwise order and direct what shall be done by the libellants in this suit in order to secure and have the benefit of the law limiting their liability, and upon compliance by the libellants with said order to cause a monition to be issued against all persons claiming any damages or any recovery against the said steamship or her owners, by reason of the stranding of the said steamship as aforesaid, citing them to appear before this honorable court and make due proof of their respective claims and the amount thereof, if any such claims they have, at or before a certain time by this court to be named in said writ; and that such further notice be given as this court might direct, and if any liability be found to exist, that the court would apportion the sum for which the libellants may be liable among the parties entitled thereto; and to make an order restraining the prosecution of all and any suit or suits against the libellants or against the steamship in respect of any such claim, as is provided by the rules and practice in admiralty, and for such other and further relief as to the court shall seem meet, it is now, on motion of Butler, Stillman and Hubbard, proctors for the libellants and petitioners.

"Ordered, that all persons and parties interested, sustaining damage or injury by reason of the stranding aforesaid, show cause before this court, at the court rooms thereof, in the United States court house, in the city of Brooklyn and state of New York, on the twelfth day of March, 1879, at eleven o'clock in the morning of that day, or as soon thereafter as counsel can be heard, why an appraisement should not be made of the said steamship, and of the interest of the libellants respectively in said steamship, and in her pending freight for the voyage upon which she was bound, and why the libellants and petitioners should not have such other, further or different relief, or order, in the premises as may be meet and proper, and in the meantime and until otherwise ordered by this court, let the commencement or prosecution of all or any suits against the said libellants and petitioners, as owners of said steamship, for or on account of any of the damages arising from the stranding mentioned and referred to, be hereby enjoined and restrained; and, on like motion, it is further

"Ordered, that notice of this order be given to all persons interested, by publishing a notice thereof in the Brooklyn Daily Union-Argus and in the New Haven Journal and Courier, for fourteen days prior to the return-day of this order, and by mailing copies thereof to the Winchester Repeating Arms Company of New Haven, Connecticut, and to the Providence Tool Company of Providence, Rhode Island, and to such other persons as the libellants' proctors may be advised."

Under this order special appearances have been entered by various parties in interest, for the purpose of objecting to the jurisdiction of the court; and on behalf of the Winchester Repeating Arms Company special exceptions to the libel have been filed.

One important question thus raised is, whether, upon the facts stated in the libel, the libellants are entitled to have applied for their benefit that rule of the general maritime law which limits the liability of a shipowner to the value of his ship and freight?

In regard to this question there seems to be no difficulty. It appears by the libel that the stranding out of which the libellants' liability arose, occurred at a place within the territorial limits of the United States. The libellants having seen fit to navigate their vessel within the territorial limits of the United States, have subjected themselves in the matter of the extent of their liability for acts there done to the laws of the United States there in force; and as the statutes of the United States "are to be given full operation in all cases occurring within the limits of the binding obligation of these statutes" (Story, Confl. Laws, § 373g)—that is to say, in all cases arising within the limits of the United States—the extent of the libellants' liability, caused by the stranding set forth in the libel, is to be determined according to the statute law of the United States upon the subject of the limit of the liability of owners of ships, now to be found in sections

4283 and 4284 of the Revised Statutes of the United States. And as the libellants are to be judged in respect to the extent of their liability by those statutory provisions, they are entitled to claim any benefit afforded by those same provisions.

In the case of Thomassen v. Whitwell [Cases Nos. 13,929, 13,930], before this court, the application of these provisions of the statutes of the United States was denied to certain foreigners, and the rule of the general maritime law was applied in their behalf; but in that case the liability arose out of a collision on the high seas beyond the territorial limits of the United States, where, as this court held, the statutes of the United States had no effect, and where the only law of the place was the general maritime law, which by comity courts of admiralty are permitted in a proper case to administer. That decision is supported by the decisions of the English courts upon a similar question. Cope v. Doherty, 2 De Gex & J. 614; The Wild Ranger, 1 Lush. 553; General Iron Screw Collier Co. v. Schurmanns, 29 L. J. Ch. 877.

The principle upon which this court proceeded in the case referred to was acted upon by the supreme court of the United States in Smith v. Condry, 1 How. [42 U. S.] 28, where it said: "The collision having taken place in the port of Liverpool, the rights of the parties depend upon the provisions of the British statutes there in force."

The question presented in England by the English act of 1862, is a different question from that which arose in the cases above referred to, and different also from that which arises under our statute.

For these reasons, I am of the opinion that the present libel, in so far as it seeks at the hands of this court an application of the rule of the general maritime law, is bad.

I next proceed to inquire whether, upon the facts stated in the libel, any benefit is afforded the libellants by the provisions of the statutes of the United States above referred to. Here the contention on the part of the objectors is, that inasmuch as it appears on the face of the libel that no action has been instituted either against the libellants in personam or against their ship in rem to recover for the losses caused by the stranding in question, this court has no jurisdiction under the statute to entertain an action instituted by these ship-owners for the purpose of effecting a distribution of the value of their ship among those having valid claims for such losses, and of obtaining protection against future proceedings to recover for such losses.

The argument is, that the supreme court of the United States, by the language used when deciding the case of Norwich & N. Y. Transp. Co. v. Wright, 13 Wall. [80 U. S.] 104, and in framing rules of 1872 (Admiralty Rules 54–57), for the purpose of regulating the method for obtaining the benefit of the statute, have in effect construed the statute as applicable only in cases where suits have been instituted either against the ship-owner or his ship.

It is evident that the supreme court, when deciding the case of Norwich & N. Y. Transp. Co. v. Wright [supra], as well as in framing the rules of 1872, had in mind no cases save those where suits have been instituted against the ship-owner or his ship. But it cannot, I think, be supposed that it was intended by the court to declare that the operation of the statute was to be limited to cases of that description. The case then before the court was one where suits had been instituted. No question was made in regard to cases where no suits have been begun, and neither the decision referred to nor the rules can properly be held by implication to furnish authority adverse to such a case.

In the absence of any previous authoritative construction of the statute, the language of the act, as understood by this court, must, therefore, on this occasion, control the determination. Looking to the statute itself, I am unable to find in it any words of limitation by which to determine that its operation is to be confined to cases where actions have been instituted to recover for losses, and against which relief is sought. No such words of limitation have been pointed out by the advocates of the objectors. The language is as follows: "The liability of the owner of any vessel for any embezzlement, loss, etc., * * * done, occasioned or incurred without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner, in such vessel and her freight then pending." Rev. St. § 4283. These words appear to me to be intended to give to the provision effect under all circumstances, and such an intention is in harmony with the object of the statute.

But it is further said there is no provision in section 4283 which authorizes an action on the part of the shipowner to obtain the benefit of the provision, and the section must therefore necessarily be considered to confer simply a right of defence against actions brought.

I know not on what ground so to hold. Clearly section 4283 confers upon the shipowner a right to a limitation of his liability in any case where losses such as the statute describes occur. How, then, can he be denied access to a court of admiralty,—being a court of equity, and, as now settled, having full jurisdiction of the subject-matter,—for the purpose of asserting that right?

The language of the supreme court in Norwich & N. Y. Transp. Co. v. Wright [supra], where it is said, "Congress might have invested the circuit courts of the United States with the jurisdiction of such cases by bill in equity," indicates an opinion by that court that any right under this statute that could be enforced by a bill in equity before the chancellor, can be enforced by libel in a court of admiralty. A proceeding like the present

is quite analogous, in respect to the principle which permits the action to be brought, to bills of peace, bills to set aside contracts tainted with fraud or entered into by mistake, which are common in courts of chancery.

Here the vessel lies sunk on Little Gull Island, but, as the libel shows, these ship-owners have in their possession wreckage saved from the vessel which they desire to abandon for distribution among those claiming losses. This property they cannot sell without danger of affecting their right to a limitation of their liability. No creditor has pursued them or this property, although they have had the wreckage for some six months. There are parties who claim to hold them responsible for the consequences of the stranding of the vessel, who delay the institution of their actions. Under these circumstances there seems to be a plain equity in the application of these ship-owners to be permitted now to abandon their vessel and have an adjudication as to the extent of their liability arising out of the stranding in question. Nor is it seen how the rights of any one can be prejudiced by such a course.

For these reasons I am of the opinion that the right conferred by section 4283 of the Revised Statutes of the United States affords a legal foundation for the present proceeding.

But if not, then I am of the opinion that this proceeding is an appropriate proceeding within the meaning of section 4284. Here the contention of the objectors is, that the proceeding of the libellants is not such a proceeding as is authorized by section 4284, because the libellants do not admit any liability at all. It is said the only proceeding authorized by section 4284, is a proceeding for the single purpose of apportioning a sum of money for which a ship-owner is liable, and upon the face of this libel there is no such sum, because the libellants deny all liability.

A similar objection was overruled by Judge Blatchford in the case of In re Providence & N. Y. Steamship Co. [Case No. 11,451]. Since the promulgation by the supreme court of the United States of the rules of 1872, wherein is contained an express provision permitting a denial of the ship-owner's liability, it cannot be considerd open to the district courts to reject a proceeding as not authorized by section 4284, because a denial of all liability is one feature of the proceeding.

I have thus reached the conclusion that this proceeding can be maintained as a proceeding duly authorized by law, in which it is competent for a court of admiralty to grant to these libellants the relief prayed for, by virtue of the statutory laws of the United States, to which reference has been made.

It is next to be considered whether the proceeding has been instituted in a proper district. It appears from the libel that the stranding in question occurred within the territorial limits of this district; and, also, that the property which the ship-owner seeks to abandon, is within this district, and that no suit has been instituted in any other district. These facts make this a proper district, at least, in which to institute a proceeding looking to the distribution of this property.

There remains to consider several questions of less importance raised by the special exceptions filed to this libel. One objection so raised, is that the libel does not conform to the twenty-third admiralty rule, which provides, that if the action be in personam, the places of residence of the parties must be stated. This proceeding, it is said, is an action in personam, and the libel is defective in omitting to state the residence of the libellants. I have on a former occasion expressed the opinion that a proceeding under these sections of the statutes of the United States, is in its nature an action in personam. The opinion that it is a proceeding in rem has been expressed by Judge Blatchford, in the case of In re Providence & N. Y. Steamship Co. [supra]. But whether the proceeding be in personam or in rem, or whether it partakes of the character of a proceeding both in personam and in rem, is not an important question here, for aside from the twenty-third admiralty rule, there is a good reason why the residence of the libellant should be stated in all cases where it is sought to invoke the rule of the maritime law in regard to the limitation of a ship-owner's liability. That reason is, that the action of the court may depend upon the residence of the parties making the application. In this case, for instance, the libellants are conceded to be British subjects, residents of Great Britain; and inasmuch as by the present statute law of England, British courts are forbidden to administer the general rule of the maritime law even in cases arising on the high seas, and between foreigners, it may be that American courts will not feel bound to entertain the prayer of British subjects for the benefit of the rule of the maritime law to the detriment of citizens of the United States. The libel should therefore state the nationality and residence of the libellants, in order to enable that question to be presented to the court at the commencement of proceedings, and by exception to the libel.

The next objection to the libel is, that it mingles together two distinct rights having different sources, viz., a right arising under the general maritime law, and a right arising under the statute of the United States. The libel describes a certain state of facts, and upon those facts claims alternative relief. The principle upon which the practice of the admiralty court rests, namely, to give despatch, avoid circuity or multiplication of actions, and to afford any relief that the facts may justify, and that is in accordance with equity, will surely permit the demanding alternative relief in a case like this. The libel is not therefore defective, because it is a libel with a double aspect.

Lastly, it has been said that the libel does

not make an absolute tender of the vessel and wreckage, to be distributed by this court; but while it tenders with one hand, withdraws the tender with the other. I do not so read the libel. As understood by me, and also as understood by the libelants, according to their contention here, the libel tenders an absolute surrender of the vessel and the wreckage in the hands of the libellants, to the custody of this court, to be disposed of according to the order of this court, and in case the proceedings be entertained, it will be impossible afterwards to withdraw the fund from the control of the court. Of course, if upon the final determination of the cause, it be held that there is no valid claim upon this property for losses occasioned by the stranding in question, it will then be open to the libellants to ask at the hands of the court a re-payment of the fund to them—but none the less is there the absolute abandonment which the law requires.

I have now considered all the questions upon which my opinion has been sought, and the result is, that with an amendment showing the residence of the libellants, as to which there is no dispute, the libel will be entertained and an order made for the ascertainment of the interest of the libellants in the said vessel at the time of the loss and damage mentioned, and for the payment of such sum into the registry of the court, and that a monition thereupon issue according to the prayer of the libel.

Subsequently, on the 16th of July, the following decision was made:

BENEDICT, District Judge. Upon settlement of the order to be made in pursuance of the decision of this court in this cause upon the exceptions, rendered June 21st, 1879, the point has been made, that no authority in law exists by which the court can direct the marshal to take into his custody the property which the libellants desire to surrender to the court for distribution among those who may be found entitled to share therein.

The statute, it is said, confers no authority save only to apportion a sum of money or to appoint a trustee, to whom the ship-owner may transfer his interest in the vessel, and the only authority conferred by the admiralty rules is to authorize payment into court of the value of the ship-owner's interest in the ship and freight, or to accept a stipulation for the payment of such value, or for the transfer of the interest to a trustee to be appointed by the court.

Upon examining the libel it will be noticed that it contains no prayer to be allowed to make a transfer to a trustee, nor for the appointment of a trustee to accept such a transfer. The only prayer is that the court would order the sale of the vessel, or for the appraisement of the value of the vessel and her pending freight, and for the payment thereof into court, or for the giving a stipulation for the payment thereof into court.

While the libel thus appears to ask this court to sell the vessel, and may be considered as asking that all things be done necessary to accomplish such a sale and realize the proceeds which would involve taking the vessel into custody, there are no facts averred in the libel or presented by affidavit showing any necessity for a sale by the court. Therefore, while not intending to decide for or against the existence of the power to sell in a proper case, I have no hesitation in saying that circumstances will be required to warrant the adoption of any methods of procedure other than those which have been formally approved by the supreme court in the admiralty rules. No such circumstances are here shown and the order must therefore be for the appointment of appraisers and a payment into court of the appraised value.