## THE THINGVALLA.[1]

### THE GEISER.

### *In re* DAMPSKIBSSELSKABET THINGVALLA.

*(District Court, E. D. New York. May 8, 1890.)*

COLLISION—BETWEEN STEAMERS—CROSSING COURSES—LIMITING LIABILITY.

The steam-ships Thingvalla and Geiser, belonging to the same company, met on the high seas about 4 o'clock of a dark and rainy morning. The Thingvalla ported, and kept a-port. The Geiser starboarded, and remained so. Both vessels reversed, but the Thingvalla struck the starboard side of the Geiser, sinking her almost immediately. On petition by the owner of the vessels for limitation of its liability, various claimants alleged that the collision was caused by the fault of the Thingvalla. Claimants' contentions were as follows: (1) That the vessels were on crossing courses, not meeting end on, as petitioner alleged; but *held* that, in either case, the right of the Thingvalla to port was the same. (2) That, after the Thingvalla had ported to the Geiser's red light, she lost that light, and saw the green, and that thereupon it became her duty to starboard. *Held*, that under the circumstances, knowing her own right to port and the Geiser's error in starboarding, and not knowing but what the Geiser would attempt to correct her error by porting, there was no fault in the Thingvalla's omitting to starboard during the comparatively short period from her losing the Geiser's red light to the collision. (3) That either the Thingvalla was running full speed in a fog, or had an insufficient lookout. *Held*, that the evidence did not show fog, and did show that the Geiser was seen in time for the Thingvalla to have avoided her if the Geiser had maintained her course. (4) It was also charged that the Thingvalla showed no mast-head light, but *held*, that the evidence did not sustain the charge. *Held, therefore*, that the collision was not due to fault on the part of the Thingvalla, and the petitioner was entitled to a limitation of its liability.

In Admiralty. On hearing of petition for limitation of liability.

*Wing, Shoudy & Putnam*, for petitioner.

*Sidney Chubb, R. D. Benedict, E. B. Convers, J. Edward Swanstrom, August Reymert*, and *Herbert Kettell*, for various claimants.

BENEDICT, J. The petition in this case is filed by a corporation owning the Danish steam-ships Thingvalla and Geiser, to obtain a limitation of its liability for damages occasioned by a collision which occurred between those two vessels on the high seas, not far from Sable island, on the 14th day of August, 1888. At the time of the collision, the Geiser was outward bound from New York with passengers and cargo, and the steamer Thingvalla was bound to New York, also laden with cargo and passengers. These two steamers came in collision about 4 o'clock of a dark and rainy morning, the Thingvalla striking the Geiser on her starboard side, almost at right angles, and cutting her nearly

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

in two, so that she sunk in deep water almost immediately; the steamer and her cargo being totally lost, and some 50 persons on board of her being drowned. The bow of the Thingvalla was smashed in by the collision, and she reduced to a sinking condition, but her master, by the exercise of a care and skill which deserves mention, succeeded, by running her stern foremost for the whole distance, in reaching Halifax, some 180 miles distant. The name of this master is Soren J. Laub. The Geiser and her cargo being lost, of course nothing has been brought into this court to represent her. The petitioners' interest in the Thingvalla and her pending freight is represented by upwards of $60,000, which has been brought in by them, and is now in the registry. The petition sets forth that the collision occurred through no negligence upon the part of the persons having charge of the navigation of the Thingvalla, and prays that, if it so appears upon hearing of the cause, the petitioner may be decreed to be free from responsibility for the loss and damage caused by the collision. Several insurance companies and others interested in the cargoes laden on board these steamers appear, and deny the allegation of the petition, and assert that the collision was caused by fault on the part of the Thingvalla.

As the collision happened about 4 o'clock in the morning of a rainy day, there would be, in the ordinary course of events, no one on the deck of either vessel except those whose duty required them to be there. The first and third officer of the Thingvalla were on the bridge. They have been called and examined by the petitioner. The lookout is not called. Of the Geiser's survivors, the third officer and a young man were on the deck at the time of the collision. The former has been called as a witness, the latter not. Her second officer, who was below deck and asleep, and her master, who came on the bridge a moment before the collision, have also been examined. Two master mariners of great experience testify, as experts, at the call of the claimants, and also a single passenger from the Geiser.

Upon the testimony given by these witnesses, the claimants of the fund in court contend, first, that the steamers were upon crossing courses, and not, as the petitioner asserts, meeting end on, within the meaning of article 15. But, assuming the testimony to support this contention, it does not follow that the navigation of the Thingvalla was faulty. What the navigation of the respective vessels was, is not in dispute. The Thingvalla, upon discerning the Geiser, ported her helm, and kept under her port helm until the two vessels were in contact, meanwhile stopping and reversing her engines. The Geiser, upon discovering the Thingvalla, starboarded her helm, and kept under her starboard helm until the vessels were in contact, meanwhile stopping and reversing her engines. The vessels were either meeting end on or upon crossing courses. In either case, the right of the Thingvalla to port was the same. So, in either of these cases, it was wrong navigation for the Geiser to starboard, as she did. The main contention on the part of the claimants is that if it be that the Thingvalla had the right to port in the first instance, and if it be that the Geiser was wrong in starboarding as she did, nevertheless it

was the duty of the Thingvalla, when she saw the red light of the Geiser disappear, to starboard her helm, because by so doing she would have avoided collision. In the light of the facts disclosed by the testimony, I am inclined to believe that if the Thingvalla had swung sharply to port under her starboard helm, as soon as the Geiser shut out her red light and displayed only her green, collision would have been avoided. But it by no means follows that the Thingvalla can be adjudged to be in fault for not swinging under her starboard helm when the Geiser's red light was shut out. The facts then known to the officer in charge of the Thingvalla were these, and these only, namely, that he had the right to avoid the Geiser by porting; that the Geiser, under a starboard helm, was in the wrong; and that, as the vessels were then approaching, risk of collision was manifest to those in charge of both vessels. What had induced the Geiser to starboard, the officer in charge of the Thingvalla did not know; nor did he know what is now known, that no effort to return to her true course would be made by the Geiser. On the facts known to him, he was entitled to presume that the Geiser, upon discovering the Thingvalla under her port helm, would be conscious of error, and would at once endeavor to correct it by shifting the Geiser's helm from starboard to port. Knowing what he did, and nothing more, no obligation to starboard his helm attached to the officer in command of the Thingvalla. Capt. Thompson, testifying as an expert, expresses a belief that, under the circumstances narrated, he would have taken the chances, and starboarded, as soon as the Geiser's red light was shut out. But it is easy to arrive at such a belief after the event. Whether this experienced and skillful navigator, if he had been in command of the Thingvalla at the time, charged with the responsibility of the lives and property on board, would have "chanced it," and put his vessel at full speed under a starboard helm, cannot now be known. What is known is that if he had done so it would have been in violation of law. Capt. Milbank, also testifying as an expert, is likewise of the opinion that if he had commanded the Thingvalla under the circumstances, with 50 seconds of time, he would have taken the chances of assuming the green light of the Geiser to be a persistent green light; and with a persistent green light ahead he would starboard his helm, and go on at full speed. But the law does not compel the taking of such chances. The officer in command of the Thingvalla did not and could not know that the Geiser's green light was a persistent green light. The presumption was the other way. In the absence of that knowledge, it seems to me clear that it cannot be held to have been the duty of the Thingvalla to starboard, and go at full speed; especially when, there being then risk of collision, the law made it obligatory to stop and reverse; and to stop and reverse would be inconsistent with a starboarding of the wheel, for the power of the helm to swing the vessel is dependent on the forward movement of the screw. The question is not what bold and daring men would do, but what the law made it the duty of the officer in command of the Thingvalla to do. After a careful study of the case, aided, as I have been, by elaborate arguments on both sides, I am unable to hold the officer in

charge of the Thingvalla to be in fault for omitting to starboard his helm upon losing the Geiser's red light.

Another contention on the part of the claimant of the fund is that the Thingvalla was in fault either for not seeing the Geiser sooner than she did, or, if that was impossible by reason of the weather, in keeping up her speed of 11 knots an hour in thick weather. But there is no evidence of any fog. The testimony from those on deck is positive that lights could be seen at a sufficient distance, although the night was dark and rainy. None of the numerous passengers who were on the deck of the Thingvalla immediately after the collision are called to show that the weather was thick, and it is impossible to conclude from the evidence that the weather was such as to require the steamer to reduce her speed. As to the failure to keep a proper lookout on board the Thingvalla, the proof shows that there was a stationed lookout, and that the Geiser was seen at a sufficient distance to have enabled the Thingvalla to avoid her if she had maintained her course. Indeed, the main argument made on the part of the claimants is based upon the assumption that there was time enough for the Thingvalla to clear the Geiser by starboarding the helm after the Geiser was seen to be starboarding. It is plain, therefore, that the collision cannot be attributed to the want of a lookout on the part of the Thingvalla, nor to improper speed in thick weather.

Another contention on the part of the claimant is that the starboarding of the Geiser's helm upon discovering the Thingvalla arose from the fact that, to those in charge of the navigation of the Geiser, the Thingvalla displayed a green light, but no mast-head light; and it is urged that the collision should be attributed to the failure of the Thingvalla to display a mast-head light. But while it would seem to be the fact that no mast-head light on the Thingvalla was seen by the two witnesses who are called from the deck of the Geiser, and while it is not easy to understand how the mate in charge of the Geiser, who is shown to have been a competent navigator and who was lost by the collision, could have starboarded his helm if he had known that the approaching vessel was a steamer, it is in proof that the Thingvalla carried a mast-head light, not only from those called from the deck of the Thingvalla, but from the master of the Geiser who came on deck before the vessels struck, and who says that he then saw the mast-head light of the Thingvalla. The suggestion is made that a sail on the Thingvalla's stays might have hid the mast-head light, but of this there is no proof. It might also, perhaps, be suggested that some sudden dash of rain obscured the light, but suggestions like these do not form foundation for a judgment that the Thingvalla is responsible for this collision because of the failure to show the mast-head light. My conclusion, therefore, is that the Thingvalla must be adjudged free from any fault conducing to the collision in question, and the petitioner held entitled to exemption from liability for the damages occasioned thereby.