## THE TITANIC.

(District Court, S. D. New York. April 21, 1913. Additional Opinion May 19, 1913.)

1. SHIPPING (§ 203*)—LIMITATION OF LIABILITY—CONSTRUCTION OF STATUTE.

Rev. St. § 4282 et seq. (U. S. Comp. St. 1901, p. 2943), providing for limitation of liability of shipowners, do not pertain to the remedy like ordinary statutes of limitation, but confer absolute legal rights.

[Ed. Note.—For other cases. see Shipping, Cent. Dig. § 637; Dec. Dig. § 203.*]

2. SHIPPING (§ 203*)—LIMITATION OF LIABILITY—GROUNDS OF RELIEF.

The right of a shipowner to a limitation of liability in the courts of the United States is entirely dependent upon statute, and not upon the general maritime law.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 637; Dec. Dig. § 203.*]

3. SHIPPING (§ 205*)—LIMITATION OF LIABILITY—PERSONS ENTITLED TO BENEFIT OF STATUTE.

The British owner of a British vessel, which foundered in mid-ocean from collision with an iceberg, never having been within the jurisdiction of the United States, cannot maintain a proceeding for limitation of liability against claims arising out of her loss, under Rev. St. § 4282 et seq. (U. S. Comp. St. 1901, p. 2943).

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 641, 642; Dec. Dig. § 205.*]

In Admiralty. Proceeding by the Oceanic Steam Navigation Company, Limited, as owner of the steamship Titanic, for limitation of liability. On exceptions to petition. Exceptions sustained.

See, also, 204 Fed. 259, 260, 295, 298; 206 Fed. 500; 209 Fed. 513.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham, J. Parker Kirlin, and Norman B. Beecher, all of New York City, of counsel), for petitioner.

Hunt, Hill & Betts, of New York City (Frederick M. Brown, George Whitefield Betts, Jr., A. Leonard Brougham, and Francis H. Kinnicutt, all of New York City, of counsel), for exceptants.

HOLT, District Judge. The questions involved in this case arise upon exceptions to a petition for the limitation of liability filed by the Oceanic Steam Navigation Company, Limited, as owner of the British steamship Titanic. The petition alleges, in substance, among other things, that the petitioner, the Oceanic Steam Navigation Company, Limited, is a British registered company, operating a line of cargo and passenger steamships between Southampton and New York; that the petitioner was the sole owner of the steamship Titanic, built in Belfast and launched in 1911; that on April 10, 1912, the Titanic, with passengers and cargo on board, left Southampton on her maiden voyage, bound for New York; that on April 14, about 11:40 p. m., in mid-ocean, in latitude 41° 46' N. and longitude 50° 14' W., the Titanic came into collision with an iceberg, as a result of which she sank about 2:20 a. m. on April 15, 1912; that 711 persons were saved in the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

boats; that her master, many of her officers and crew, and a large number of passengers, perished; that the vessel, her cargo, the personal effects of the passengers and crew, the mails, and everything connected with the vessel, except 14 lifeboats and their equipment, became a total loss; that the value of the lifeboats saved and of the pending freight and passage moneys did not exceed the sum of $91,-805.54; and that the petitioner claimed exemption from liability. The petition prayed that an appraisement be made of the value of the petitioner's interest in the Titanic, and of her pending freight; that an order be made authorizing the petitioner to file a stipulation for the payment into court of the amount of said value whenever the court should order; that the court issue a monition requiring claimants to appear before a commissioner and prove their claims; that an injunction issue restraining the prosecution of suits against the petitioner except in the present proceeding, and that the court adjudge that the petitioner's liability be limited to the value of the petitioner's interest in the steamship at the end of the voyage. Annexed to the petition is a list of claimants who have filed proofs of claims against the owner of the Titanic. Among them are Harry Anderson and William J. Mellor. These claimants have separately filed exceptions to the petition. The exceptions of Mellor are as follows:

(1) That the petition does not state facts sufficient to show a cause of action for limitation of liability under United States law, and the practice of this court; (2) that the petition shows on its face that the acts by reason of which and for which it claims limitation of liability took place on board a British registered vessel on the high seas, and not within the territorial waters of any state or country, and therefore the law of Great Britain with reference to limitation of liability, if any, would apply, and not that of the United States.

The exceptions filed by Anderson, although somewhat more detailed, are substantially to the same effect.

The question whether the owner of a foreign ship could claim exemption from liability under the Limited Liability Act of March 3, 1851, c. 43, § 1, 9 Stat. 635, which was substantially re-enacted in sections 4282 to 4289 of the United States Revised Statutes (U. S. Comp. St. 1901, pp. 2943–2945), is one which was considered early in the cases arising under the act. When that act was passed there was a substantially similar statute in force in Great Britain. The English courts had uniformly held that, in the case of collisions between British and foreign vessels, or between two foreign vessels, neither party could take the benefit of the British act, but each was liable without limit for negligence causing disaster at sea. The Wild Ranger, P. C. Lush. Adm. 553; Cope v. Doherty, 2 De Gex & J. 614; The Carl Johan, 3 Hag. Adm., 186; The Amalia, 1 Moore P. C., N. S., 471; The Zollverein, Swabey, 96; The Saxonia, Lush. Adm., 410. These cases were all based on the general doctrine that the laws of Great Britain have no extraterritorial effect. By the Merchants' Shipping Act of 1894, the previous statutes were repealed, and now by that act the owners of a ship, British or foreign, are liable for damages in respect to loss of life or personal injury to an aggregate amount not exceeding £15 for each ton of the ship's tonnage, and, in

respect to loss or damage to vessels, goods, merchandise, or other things, to an aggregate amount not exceeding £8 for each ton of the ship's tonnage. MacLachlan's Law of Merchant Shipping (5th Ed.) p. 129.

The first of these cases under the American statute to which my attention has been called was the case of Dyer v. National Steam Navigation Co., 3 Ben. 173, 8 Fed. Cas. 204, which on appeal is generally cited as the case of The Scotland. The facts in that case were that the British steamer Scotland came into collision with the American ship Kate Dyer on September 8, 1866, about 180 miles off Sandy Hook. The Kate Dyer sank immediately. The Scotland, badly damaged, attempted to reach New York, but sank about two miles from Sandy Hook, at a spot where the Scotland Lightship has since been stationed. The suit was brought in personam by the owners of the Dyer against the owner of the Scotland. In that suit, among other defenses, the defendant pleaded that "there is no liability in personam against these respondents for said loss of the Kate Dyer." 8 Fed. Cas. 208. There is no reference to this defense in the opinion of Judge Benedict, before whom the case was tried. He decided that the Scotland was in fault for the collision, and rendered a judgment in favor of the libelants for the value of the Kate Dyer. The case was appealed to the United States Circuit Court, and heard before Judge Blatchford. In his decision he considers the defense pleaded of exemption from liability, and refers to the fact that the answer does not state whether the alleged nonexistence of liability is claimed under the act of March 3, 1851, or under the general maritime law. Considering the question on the theory that the act of 1851 applied, Judge Blatchford says that no proceedings were instituted by the defendant to obtain an exemption from liability, and that no transfer of interest in the vessel and freight to a trustee had been made, that certain anchors, chains, rigging, etc., had been saved from the steamer, which were of the value of several thousand dollars, and that that property or its proceeds should have been surrendered or transferred, if the act of 1851 was to be availed of. He, therefore, held that, there having been no such surrender, and no proceedings taken by the defendants to obtain exemption from liability, the defense could not be maintained. He adds at the close of that portion of his opinion which deals with this question:

"I have not found it necessary to determine the question whether the act of 1851 applies to the owners of a foreign vessel who seek the benefit of that act."

He then considered the question whether, under the general maritime law, the defendant is exempt from liability, and held that, as he had not surrendered what was left of the vessel, such exemption could not be claimed under that law. An appeal was taken to the United States Supreme Court, but the case in that court was not decided until 1881. Meanwhile several other cases arose, and were decided in District Courts.

In Thommessen v. Whitwill, 9 Ben. 403, Fed. Cas. No. 13,929, the facts were that the Norwegian bark Daphne came into collision with

the British steamship Great Western, about 180 miles from Sandy Hook. The master of the bark sued the owner of the steamer. Judge Benedict held that, as the Great Western was a British steamer, owned by a subject of Great Britain, and the collision was on the high seas, the owner of the steamer could not claim exemption under the American statute, on the ground that it had no extraterritorial force. He was of the opinion, however, that it could claim exemption under the general maritime law, but that the wreck having been sold at public auction and delivered to other parties, the defendant must, by the general maritime law, be held to have intentionally waived his right to claim exemption. He, therefore, having held the steamship in fault for the collision, gave judgment for the libelant for the amount of the damage. The same view substantially was expressed by Judge Benedict in the case of Churchill v. The Ship British America, 9 Ben. 516, Fed. Cas. No. 2,715, while in the case of The John Bramall, 10 Ben. 495, Fed. Cas. No. 7,334, decided in June, 1879, a case in which a British ship stranded on the coast of the United States, he held that the owner could take advantage of the American statute because the loss occurred within the territorial limits of the United States. In Levison v. Oceanic Steam Navigation Co., 15 Fed. Cas. 422, decided in January, 1876, the facts, which are fully stated in Marckwald v. O. S. N. Co., 11 Hun (N. Y.) 462, were that the British steamer Atlantic was wrecked off the coast of Nova Scotia. Limitation proceedings were brought by the owner in the United States District Court for the Southern District of New York, and resulted in a final decree limiting the liability of the owner, no question having been raised as to the nationality of the steamer. Subsequently a suit was brought by Levison, a passenger, against the company in the Circuit Court for the Southern District of New York, and the defendant pleaded in bar the final decree in the limitation proceedings. Judge Shipman held that the decree was a bar, and that the United States statute limiting the liability of shipowners was not in terms confined to American vessels, but was the adoption of a general maritime principle applicable to the owners of foreign, as well as American, vessels.

In this condition of the authorities, the appeal in the case of Dyer v. National Steam Navigation Co., reported under the title of The Scotland, 105 U. S. 24, 26 L. Ed. 1001, was decided in the Supreme Court during the term of October, 1881. In that case the decision of the Circuit Court was substantially reversed. The court held that the rule of the general maritime law of Europe was not received as law in England or in this country until made so by statute, and that, while the rule adopted by the statute was substantially the same as the rule of the general maritime law, its efficacy as a rule in this country depends wholly upon the statute, and not upon any inherent force of the maritime law. In respect to the objection that the defendant did not give up or convey to a trustee the strippings of the wreck and the pending freight, the opinion states that the law contains two distinct and independent provisions on the subject, one that the shipowners shall be liable only to the value of the ship and freight, and the other that they may be discharged altogether by surrendering the ship and

freight; that if they fail to avail themselves of the latter proceeding, they are still entitled to the benefit of the former kind of relief; that therefore the defense pleaded below of exemption from liability applied if the act applied to foreign ships. Upon that question Judge Bradley, in the opinion, says:

"In administering justice between parties it is essential to know by what law, or code, or system of laws, their mutual rights are to be determined. When they arise in a particular country or state, they are generally to be determined by the laws of that state. Those laws pervade all transactions which take place where they prevail, and give them their color and legal effect. Hence, if a collision should occur in British waters, at least between British ships, and the injured party should seek relief in our courts, we would administer justice according to the British law, so far as the rights and liabilities of the parties were concerned, provided it were shown what that law was. If not shown, we would apply our own law to the case. In the French or Dutch tribunals they would do the same. But, if a collision occurs on the high seas, where the law of no particular state has exclusive force, but all are equal, any forum called upon to settle the rights of the parties would prima facie determine them by its own law as presumptively expressing the rules of justice; but if the contesting vessels belonged to the same foreign nation, the court would assume that they were subject to the law of their nation carried under their common flag, and would determine the controversy accordingly. If they belonged to different nations, having different laws, since it would be unjust to apply the laws of either to the exclusion of the other, the law of the forum—that is, the maritime law as received and practised therein—would properly furnish the rule of decision." 105 U. S. 29, 30, 26 L. Ed. 1001.

The Supreme Court accordingly held that, as that was a case of a collision between a British steamship and an American ship, the American statute furnished a defense to the owner of the Scotland to the extent of limiting its liability to the value of the remnants of the ship and the pending freight. A reference was ordered to determine such value. Upon that reference the libelant claimed that, in addition to the value of the remnants of the ship and the pending freight, they were entitled to the amount of the insurance collected by the owner of the Scotland. Upon that question the case came again before the Supreme Court (118 U. S. 507, 6 Sup. Ct. 1174, 30 L. Ed. 153), and the court affirmed the decision of the Circuit Court below to the effect that insurance money should not be included in computing the value of the vessel.

In The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860, 29 L. Ed. 152, decided in 1885, a case in which the Norwegian bark Luna and the Belgian steamship Belgenland came into collision, the answer contained an exception to the jurisdiction, on the ground that the collision took place between foreign vessels on the high seas. Judge Bradley, in the opinion, in substance restated the doctrine of the Scotland, stating that the general rule required the application to such cases of the general maritime law as embodied in the American statute, but with certain qualifications, one of which was:

"That if the maritime law, as administered by both nations to which the respective ships belong, be the same in both in respect to any matter of liability or obligation, such law, if shown to the court, should be followed in that matter in respect to which they so agree, though it differ from the maritime law as understood in the country of the forum; for, as respects the parties concerned, it is the maritime law which they mutually acknowledge. The

Scotland, 105 U. S. 24, 31 [26 L. Ed. 1001]." 114 U. S. page 370, 5 Sup. Ct. page 867, 29 L. Ed. 152.

In 1885 the appeal in the case of Thommessen v. Whitwill, reported in the Supreme Court under the title of The Great Western, 118 U. S. 520, 6 Sup. Ct. 1172, 30 L. Ed. 156, was decided. In that case the judgment of the Circuit Court, which had reversed the decision of Judge Benedict in the District Court, on the authority of the decision of the Supreme Court in the case of The Scotland, was affirmed.

In the case of La Bourgogne, 210 U. S. 95, 28 Sup. Ct. 664, 52 L. Ed. 973, arising out of a collision between the French steamer La Bourgogne and the British ship Cromartyshire, about 60 miles off Sable Island, limitation was allowed, but Judge White, in the opinion, cites with approval from the opinion of Judge Bradley in the case of The Scotland, including his statement that:

"If the contesting vessels belong to the same foreign nation the court would assume that they were subject to the law of their nation carried under their common flag, and would determine the controversy accordingly."

Various cases since the decision in the case of The Scotland have occurred in which the owners of foreign vessels injured by collision upon the high seas have obtained the benefit of the American statute limiting the liability of shipowners. These cases are In re Leonard (D. C.) 14 Fed. 53; The Thingvalla (D. C.) 42 Fed. 331; Id., 48 Fed. 764, 1 C. C. A. 87; The State of Virginia (D. C.) 60 Fed. 1018; The Strathdon (D. C.) 89 Fed. 374; The Norge (D. C.) 156 Fed. 845. Of these cases, In re Leonard was the case of a collision between the American schooner Job M. Leonard and the British steamship Aragon, on the high seas, about 15 miles south of Long Island. Judge Brown held that that case was governed by the then recently decided case of The Scotland, and allowed a limitation of liability under the American statute. The case of The Thingvalla arose from a collision on the high seas not far from Sable Island, between two Danish steamships. The proceeding was in the form of a petition by the owners of the Thingvalla for limitation of liability. The court held that the Thingvalla was free from fault in the collision, and that the petitioners were therefore not subject to any liability. No question appears to have been raised in the case, either in the District Court (42 Fed. 331), or on appeal in the Circuit Court (48 Fed. 764, 1 C. C. A. 87), whether the law fixing the liability should be the law of Denmark or of this country. The Danish law of limited liability is apparently the same in substance as our own (Danschewski v. Larsson, 3 Revue Int. du Droit Marit. 348; Thommessen v. Whitwill, 9 Ben. 403, Fed. Cas. No. 13,929), and that may have been the reason why the point was not raised.

In the case of The State of Virginia (D. C.) 60 Fed. 1018, the British steamship State of Virginia, owned by a British corporation, stranded on Sable Island on a voyage from New York to Glasgow, and was wrecked. There obviously can be no distinction in principle between the case of damage arising from a collision between two ships of the same country and from a ship being wrecked on the coast of the country to which she belongs. The owners filed a petition for limita-

tion of liability, and Judge Benedict held that they were entitled to such exemption. The opinion was very short. He cited no authorities, and, after stating the facts, closed his opinion as follows:

"My opinion is that the extent of the liability of the shipowner, in a case like this, is determined by the statutes of the United States, and not by the statutes of Great Britain."

In view of the reversal, in the cases of The Scotland and The Great Western, of the earlier decisions of Judge Benedict, it seems to me a fair inference that in deciding the case of The State of Virginia, Judge Benedict probably either overlooked the qualification of the general rule stated in the case of The Scotland, or was led by those decisions either to change his own opinion, or to conclude that the law would ultimately be determined in favor of the right of any foreign shipowner to limit his liability under the American statute in all cases.

In The Strathdon (D. C.) 89 Fed. 374, the owners of the British steamer Strathdon petitioned for a limitation of their liability for claims growing out of injuries to the cargo from a fire which occurred in the Suez Canal on a voyage from Java to New York. The substantial questions argued were whether the fire was caused by the design or neglect of the shipowners within the meaning of section 4282 of the United States Revised Statutes, exempting shipowners from liability for loss or damage to merchandise by a fire unless it be caused by their design or neglect. No point seems to have been taken in that case on the question whether the owner of the vessel was entitled to an exemption from liability by reason of the fact that the ship was a British vessel.

In the case of The Norge (D. C.) 156. Fed. 845, a Danish steamship was lost on the high seas through striking a derelict or unknown obstruction under the water. The owner filed a petition for limitation of liability, but contested all claims filed against the steamer, and was held not to be responsible for such claims. Judge Adams held that it was not necessary to consider the question whether there were special exemptions from liability under the law of Denmark, as the law of the Norge's flag, on the ground that there was no liability.

In addition to these cases in which a direct proceeding for the limitation of liability has been had, there are other cases which have occurred since the decision of the case of The Scotland, but which are instructive as bearing on the general rule that the laws of no country have any extraterritorial effect. In The Lamington (D. C.) 87 Fed. 752, a Norwegian seaman who had shipped on the British ship Lamington was injured, while attempting to furl a sail, by the breaking of a rope, which caused him to fall to the deck. The court held that the general rule applied that the liability for a tort was determined by the law of the place where the tort was committed; that a British steamer constituted a part of Great Britain; that the liability for negligence resulting in injury to the libelant was a tort governed by the law of Great Britain; and that the law of Great Britain did not create a maritime lien on a vessel, or confer a right of action in rem, for a tort negligently committed upon a seaman. The court

therefore dismissed the libel on the ground that the claim must be determined by the laws of the country to which the vessel belonged, although by the law of this country such a claim is held to give a maritime lien enforceable against the ship.

In The Eagle Point, 142 Fed. 453, 73 C. C. A. 569, two British steamers, the Eagle Point and the Biela, came into collision on the high seas. Each was at fault. The Biela and her cargo were totally lost. The Biela's cargo owners sued the Eagle Point in Philadelphia. Under the British law, in the case of a collision in which both vessels are at fault, the cargo owner injured can recover 50 per cent. of the damage from each party. Under the rule in the United States, the party damaged can recover the full amount of the damage from either vessel, upon the theory that they are joint tort-feasors. In that case the District Court awarded a full recovery under the American law against the Eagle Point for the amount of the damage to the cargo owners, but on appeal to the Circuit Court of Appeals this judgment was reversed, on the ground that the British law, under which a person suffering damage from a collision caused by the fault of two vessels was entitled to recover from each vessel only a half of his loss, applied.

From this review of the cases, I think that it certainly cannot be claimed that the right of the owner of the Titanic to limit its liability under the United States law is free from doubt. The case of The State of Virginia (D. C.) 60 Fed. 1018, is indeed a direct decision in favor of the petitioner. All the other cases, since the decision in the case of The Scotland, in which the owners of a foreign vessel injured on the high seas have been permitted to obtain a limitation of liability, are either cases in which the collision was between vessels of different countries, when limitation was authorized by the case of The Scotland, or are cases in which no question was raised as to the right to obtain limitation under the United States statute, either because the rule of liability of the country to which the vessel belonged was the same as that of this country, or because the case was decided by the court upon other grounds, and the question not raised in the case. The decision in the case of The State of Virginia is, in my opinion, not only in conflict with the rule stated in The Scotland, but is entitled to less weight on the merits than the decisions in the cases of The Lamington and of The Eagle Point. But if these decisions of courts of first instance are to be regarded as simply conflicting, the fact remains that the rule laid down in The Scotland, and restated by Judge Blatchford in the decision in the Circuit Court in The Great Western, and by Judge Bradley in The Belgenland, to the effect that when a collision occurs between two vessels of the same nation the question of their liability will be determined by the law of the country to which they belong, has never been retracted or modified by the Supreme Court, and still stands as the rule of that court. In this case the collision was between the Titanic and an iceberg, but I can see no reason for a different application of the rule in a case where a vessel is injured by collision with some floating object belonging to no country, or where a vessel founders on the high seas

without any appreciable cause, than in the case of injuries occasioned by the collision of two vessels of the same nation. The Titanic was a British ship. Her sole owner was a British company. She was sailing on her maiden voyage. She never had been within the territorial limits of the United States, and the question what law governs the liability of her owner seems to me, under the circumstances of the case, to be precisely the same question as would exist if she had sunk from collision with another British steamer.

[1] The petitioner claims that the rule of liability in this case is governed by the lex fori, because the statute limiting the liability of shipowners pertains to the remedy and is analogous to ordinary statutes of limitations. It is well settled that the law of the forum governs all questions pertaining to the remedy, such as questions of procedure and practice, under which are included questions arising under the statutes of limitation, but I can see no analogy between an ordinary statute of limitation and this statute limiting the liability of shipowners. Ordinary statutes of limitations provide that after a certain number of years or a certain period of time a party cannot sue. It does not affect the validity of the claim. A person having a claim secured by collateral can enforce the lien for the collateral after a direct suit upon the claim has been barred by the statute of limitations. But the statute limiting the liabilities of shipowners is a statute which affects a right. It limits the liability of a shipowner to the value of the ship and pending freight. It is not a limitation which arises after a certain lapse of time, but it exists from the outset. It seems to me like the statute fixing the amount of liability for injuries causing death. At common law no civil damages could be recovered for negligence causing death. Originally in this state $5,000 was authorized to be recovered, and no more. That was subsequently modified by a constitutional provision so as to authorize a recovery for any amount a jury might see fit to give. Can such a statute or constitutional provision be construed to relate to a remedy? It seems to me that it confers an absolute legal right, and imposes an absolute legal liability.

Counsel for the petitioner argues that the decisions holding that the Harter act applies to foreign vessels carrying goods to or from a port of the United States (The Silvia, 171 U. S. 462, 19 Sup. Ct. 7, 43 L. Ed. 241; The Chattahooche, 173 U. S. 540, 19 Sup. Ct. 491, 43 L. Ed. 801) are authorities which by analogy are applicable to the construction of the statutes limiting the liability of shipowners. This argument seems at first view plausible, but I think, upon consideration, that it is fallacious. In the first place, the third section of the Harter act applies only to vessels transporting merchandise or property to or from any port in the United States. It obviously would not apply to a suit based upon any shipment of goods on a voyage which was not to or from any port in the United States. Before the act was passed it had been established by the English authorities that a common carrier could exempt itself from liability for negligence by contract, with the result that the bills of lading given usually contained such exemptions. The courts of this country had held that a common carrier could not

exempt itself from liability for negligence, and that any contract to that effect was void. The avowed object of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), as shown in the debates in Congress upon its passage, which are fully referred to in the thorough brief of Mr. Betts, was to make the law governing the liability of American shipowners substantially, or to a considerable extent, similar to that existing in favor of British shipowners. There certainly can be no presumption that the object of Congress in passing the Harter act, or the act limiting the liability of shipowners, was to favor British shipowners. The avowed object of the legislation in both cases was to favor American shipowners, and to develop the American mercantile marine. Moreover, in my opinion, the proper construction of the language used in the third section of the Harter act is that it imposed a restriction upon the power of the courts in such cases. It provided that, if the owner of any vessel transporting merchandise or property to or from any port in the United States shall exercise due diligence to make the vessel seaworthy, neither the vessel, her owner, agent, or charterer shall become or *be held* responsible for damages resulting from errors in navigation. The governmental instrumentality which holds persons responsible is the courts. I think that the expression in the third section of the act, "vessel owners shall not be held responsible," imposes a prohibition upon the courts, in any case which comes before them, from holding vessel owners responsible to a greater extent than is provided in the statute. On the other hand, there is no specific language in the statute limiting the liability of shipowners making it applicable to foreign ships. The language is simply "any owner of any vessel." This language, ordinarily employed, might be held to mean any owner of any vessel of any nation, but by the general rule of international law the laws of no country have any extraterritorial effect. There is a legal presumption that mere general expressions in statutes which might include all mankind are restricted to the subjects of the government which enacts the law. I have no doubt that the United States might provide that the liability of the owner of any ship belonging to any country in the world should be limited, in any suits brought in this country, to the extent provided in the American statute, and that the owners of any such ships could take proceedings in the courts of this country to limit their liability, which proceedings would be binding upon the citizens and courts of this country. But the question in this case is whether the language used in the statute limiting the liabilities of shipowners is sufficient to accomplish that result.

In the case of American Banana Co. v. United Fruit Co., 213 U. S. 347, 29 Sup. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047, suit was brought under the Sherman act to recover threefold damages under that act. The facts alleged in the complaint were, in substance, that the defendant had deprived the plaintiff of the use of a plantation and railway, and had monopolized trade, by certain proceedings in Costa Rica. The court held that a statute will, as a general rule, be construed as intended to be confined in its operation and effect to the territorial limits within the jurisdiction of the lawmaker, and words of

universal scope will be construed as meaning only those subject to the legislation, and that the prohibitions of the Sherman act do not extend to acts done in foreign countries, even though done by citizens of the United States and injuriously affecting other citizens of the United States. Judge Holmes, in the opinion, after stating the facts, says:.

"It is obvious that, however stated, the plaintiff's case depends on several rather startling propositions. In the first place, the acts causing the damage were done, so far as appears, outside the jurisdiction of the United States and within that of other states. It is surprising to hear it argued that they were governed by the act of Congress. * * * The foregoing considerations would lead in case of doubt to a construction of any statute as intended to be confined in its operation and effect to the territorial limits over which the lawmaker has general and legitimate power. 'All legislation is prima facie territorial.' Ex parte Blain, In re Sawers, 12 Ch. Div. 522, 528; State v. Carter, 27 N. J. Law (3 Dutch.) 499; People v. Merrill, 2 Parker, Cr. R. [N. Y.] 590, 596. Words having universal scope, such as 'every contract in restraint of trade,' 'every person who shall monopolize,' etc., will be taken, as a matter of course, to mean only every one subject to such legislation, not all that the legislator subsequently may be able to catch. In the case of the present statute the improbability of the United States attempting to make acts done in Panama or Costa Rica criminal is obvious, yet the law begins by making criminal the acts for which it gives a right to sue. We think it entirely plain that what the defendant did in Panama or Costa Rica is not within the scope of the statute so far as the present suit is concerned."

Counsel for the petitioner urges that the question raised by these exceptions should more properly be left to be determined after evidence is taken upon the final hearing. That course is frequently pref-. erable where there is any doubt about the controlling facts in respect to which evidence should be taken. But the essential facts necessary to raise the question involved in these exceptions appear upon the face of the petition, and are entirely uncontradicted. The Titanic was a British ship, owned by a British company, which foundered in mid-ocean from collision with an iceberg. Those facts are all that are necessary to raise the fundamental question whether her owners can obtain exemption from liability by virtue of an American law. The point can be decided upon these exceptions, and can be taken up on appeal and decided upon a brief record, whereas probably a number of months, and possibly years, would be occupied in taking the evidence in this case, causing great labor, expense, and delay. I think the question should be decided at the outset.

[2] It is settled under the decisions that any exemption from liability.in this country must depend upon the provisions of the American statutes, and not upon any general provisions of maritime law. Indeed, the rule exempting shipowners from liability on surrender of the ship and freight does not seem to have ever been universally adopted throughout Europe. It is stated as a rule of maritime law in the Consolato del Mare, the code which is the leading authority on the ancient admiralty law of the countries bordering on the Mediterranean. But there is no reference to such a rule in the laws of Oleron, or of Wisbuy, or of the Hanse towns, which were the maritime codes followed in the northern parts of Europe. No such rule was ever recognized in the English courts, either of admiralty or common law, until the act of 1813 (St. 53 Geo. III, c. 159), which adopted the rule by

statute; and it is now well settled that no such rule was ever in force in this country until the act of 1851. The Scotland, 105 U. S. 28, 26 L. Ed. 1001; The Great Western, 118 U. S. 534, 6 Sup. Ct. 1172, 30 L. Ed. 156; The Main, 152 U. S. 126, 14 Sup. Ct. 486, 38 L. Ed. 381; La Bourgogne, 210 U. S. 116, 28 Sup. Ct. 664, 52 L. Ed. 973. The simple question, therefore, is as to the effect of the statute.

[3] Laying out of view the authorities in the case, it seems to me that three great fundamental principles of law relied on are decisive. The rule that the law of no nation has any extraterritorial effect is universal. The rule that a ship on the high seas is a part of the country to which she belongs is universal. The rule that liability for a tort is governed by the lex loci delicti is universal. If the owners of the Titanic under these circumstances can obtain a limitation of their liability in this court, they could have obtained it if she had foundered in the harbor of Southampton, immediately after she started on her voyage, and while still undoubtedly within the territorial jurisdiction of England. If they are entitled to limitation of liability in this country, they are entitled to limit their liability in all countries, according to the law of each country in which the proceeding is brought. There were undoubtedly upon the Titanic citizens of many countries, and property belonging to citizens of many countries. Is the liability of the owner of the Titanic to be determined by the laws of each country in which suits happen to be brought, no matter how much those laws differ? Is one claim to be determined by the law of France, if the suit is brought in France, and others by the law of Germany, or Italy, or Brazil, or Japan, merely because the suits are brought there? It seems to me that such results could not have been within the intention of Congress in passing the statute, and that the rule laid down by the Supreme Court in the case of The Scotland, that when a collision occurs on the high seas between two vessels of the same country, the liability of their owners is to be determined by the law of the country to which the vessel belongs, applies in this case.

The exceptions are sustained, and the petition dismissed.

### Additional Opinion.

HOLT, District Judge. The direction, at the end of the opinion filed, that the petition be dismissed, of course, can only apply to the exceptants Mellor and Anderson. Those parties who do not wish the petition dismissed are entitled to be heard, and to assert their claims by any proceedings under the petition which they may be advised to take. I think, on consideration, that the order should provide that the petitioner have leave to amend the petition within twenty days; that if no such amendment be made the petition be dismissed as to the exceptants Mellor and Anderson only; that if an appeal be taken within twenty days the injunctions shall continue until the final determination of the appeal; and that, if no such appeal be taken, the injunctions shall be vacated as to the exceptants Mellor and Anderson only. An order to the above effect may be presented.