## THE THINGVALLA.

### *In re* DAMPSKIBSSELSKABET THINGVALLA.

(*Circuit Court of Appeals, Second Circuit.* December 14, 1891.)

1. COLLISION—LIGHTS—EVIDENCE.

On an issue as to whether a steam-ship, before a collision, showed a white light at her mast-head, the positive testimony of witnesses that the light was properly burning there immediately before and after the collision is not outweighed by testimony of witnesses on the other vessel that they did not see the light, nor by the suggestion that the light was so hung as to render it liable to be obscured by the foretop-mast stay-sail.

2. SAME—HEIGHT OF MAST-HEAD LIGHT—EVIDENCE.

On the question as to the proper placing of the mast-head light of a steam-ship, her first officer, when asked, "How far off can your lights be seen at night?" answered, "You can see about 8 miles off,—the head-light; that mast is 20 feet high." *Held*, that the part of the answer relating to the height of the mast was not responsive, and, being the only evidence relied on for the purpose, was insufficient to show that the light was not placed at a height above the deck of 46 feet, the width of the beam.

3. SAME—STEAM-SHIPS MEETING.

The steam-ship Thingvalla, when in mid-ocean, discovered the white light and both side lights of an approaching steam-ship, the Geiser, so situated as to indicate to the navigator of the Thingvalla that the two vessels would meet end on, or

nearly so. The Thingvalla altered her course to starboard in order to keep out of the way, and continued to swing to starboard, although the red light of the Geiser disappeared, indicating that she was swinging in the same direction, until, although the engines of both were reversed, they came into collision. *Held*, whether the two vessels were meeting end on, or on crossing courses, in either case the change of course of the Geiser was in violation of rules 16 and 23, requiring her to port, if meeting end on, and to hold her course if on crossing courses; and that, as the navigator of the Thingvalla did not know but that the Geiser would change her course so as to conform to the rules, she was not in fault for not changing her course to port as soon as he saw the mistaken maneuver of the Geiser.

42 Fed. Rep. 331, affirmed.

Appeal from the District Court of the United States for the Eastern District of New York.

Petition by the Dampskibsselskabet Thingvalla (Thingvalla Steam-Ship Company) for limitation of liability for loss caused by collision of the steam-ship Thingvalla with the steam-ship Geiser. Certain insurance companies and others interested in the cargoes lost, caused themselves to be entered as respondents to the petition, and, from a decree in favor of the petitioner, appeal. Affirmed.

*Sidney Chubb*, for appellants.

*E. B. Convers* and *J. Parker Kirlin*, for appellant Hilda Lind.

*Harrington Putnam*, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. The petitioner, a Danish corporation, was the owner of two steam-ships, the Geiser and Thingvalla, which collided on the high seas, not far from Sable island, on August 14, 1888. The Geiser sank almost immediately in deep water, the steamer and her cargo being totally lost. The Thingvalla's bow was smashed in, but, by careful management, she was navigated, stern first, into Halifax, N. S. The petitioner's interest in the Thingvalla and her pending freight, which was duly appraised at $64,680.66, has been deposited in the district court for the eastern district of New York. The petitioner, claiming that the collision occurred through no negligence of those in charge of the Thingvalla, prayed to be decreed free from responsibility for the loss or damage occasioned by the collision. Several insurance companies, and others interested in the cargoes laden on the steamer, appeared and joined issue with the allegations of the petition, contending that the collision was caused by the fault of the Thingvalla. The district court held the Thingvalla free from fault, and that the petitioner was entitled to the benefit of the limitation of liability, provided for in the act of March 3, 1851, and its amendments. Appeal was taken to the circuit court, which affirmed the decree of the district court, and certain of the respondents appealed to this court. 42 Fed. Rep. 331.

The collision happened about 4:30 A. M. It was dark, the weather being cloudy, with a little rain, but there was no fog, nor such degree of haziness as would prevent vessels from seeing each other's lights at a sufficient distance easily to maneuver so as to avoid one another. As to the navigation of both steamers there is no particular dispute. The Geiser was outward bound, on a course of E. ¼ S. magnetic; the Thing-

valla inward bound, on a course of "W. ¾ S., a little more west," magnetic. The Thingvalla carried some of her sails, including the jib and the foretop-mast stay-sail. Her regulation lights were set and burning. The navigating officer of the Thingvalla,—her first officer, Jens Petersen,—seeing the Geiser's head-light, and, immediately after, her two side lights, bearing a half point on his port bow, ported, and telegraphed to the engine-room to "stand by." As the navigating officer of the Geiser—her first officer, Brown—went down with his ship, we are without positive information as to what lights he saw and navigated to. Her lookout, who was also drowned, reported a light on her port bow. Her third officer, J. Duus Petersen, who was on the bridge with Brown, the navigator, says it bore about a quarter of a point on the port bow. His glance at it was but momentary, as he at once stooped down to open the valve to let more steam into the steering gear. He took the light to be a vessel's side light, but could not be certain whether it was green or red. When he rose, after manipulating the valve, he saw it was a steamer, and saw both side lights about right ahead. As soon as the lookout reported the lights, Brown and the third officer walked to the port side of the bridge, looked at the light, and the former immediately gave the order, "hard a-starboard." The Thingvalla soon lost the red light of the other steamer, and, realizing that there was risk of collision, her navigator signaled to the engines, "stop, full speed astern," and ordered the helm hard a-port. Realizing the risk of collision, the navigator of the Geiser also ordered her engines, "full speed astern." The wheels of both steamers were kept at port and starboard, respectively, without change, both vessels swinging to the northward and coming into collision, the Thingvalla striking the Geiser on her starboard side, just abaft the mainmast.

The respondents insist that a primary cause of the collision was the improper position of the Thingvalla's white light; that it did not show properly. Two of the Geiser's watch on deck at sighting survived the disaster. One of them, a boy, was not in the employ of the petitioner at the time of the trial, and was not called. The other was her third officer, who, as stated above, looked at the reported light so hastily that he was unable to say whether it was red or green, and "does not remember to have seen her top light." A passenger who first saw the Thingvalla after the collision, when she, having backed out, was about 1,500 feet aft, saw only her red and green lights. It was then daybreak. It is argued that, because the lookout of the Geiser reported "a light," and not "a steamer," he could not have seen the white light. And the same is urged as to her first officer, who was a competent navigator, and whose orders can be accounted for only on the theory that he did not know it was a steamer to which he was maneuvering. But the master of the Geiser saw the Thingvalla's mast-head light when he was called on deck, just before the collision, saw it again when she was backing away, and again when he was swimming. The second officer of the Geiser also saw it, as he climbed aboard the Thingvalla,

after the collision. And the evidence from the Thingvalla shows that the white light was there and properly burning. It hung on the fore-top-mast stay. The captain saw the reflection on the foretop-gallant stay, and her first officer testified to the same effect. There is no evidence to show that the light was so hung relatively to the foretop-mast stay-sail that it was liable to be obscured thereby, and a mere suggestion that such might possibly be the fact is not sufficient foundation for a judgment that there was a failure to show a mast-head light, through fault of the Thingvalla. As the learned district judge remarks: "It might also be suggested that some sudden dash of rain obscured the light." Positive testimony as to the presence of the light is not to be outweighed by mere inferences, where the single witness, who testifies to a failure to see the white light before the collision, is unable to say whether the light he did see was green or red, and the extent of whose evidence is that "he does not remember to have seen the white light;" that he "had no occasion to look for it," when he stood up after opening the valve, as he then saw the steamer itself.

It is contended that the white light was improperly placed, in that it was not more than 20 feet above the deck, when it should have been upwards of 46, which is her beam. The first officer of the Thingvalla was asked: "*Question.* How far off can your lights be seen at night? *Answer.* You can see about eight miles off,—the head-light; that mast is twenty feet high." Other than this there is no evidence in the case as to elevation above the hull. The latter part of the answer was irresponsive to the question, and only by inference applies to the light. It was not fastened to the foremast, nor even to the jib stay, which leads to the foremast-head, but to the foretop-mast stay, and how high up on that stay it was fastened nowhere appears. We do not think there is sufficient evidence to warrant a finding that the light was set lower than the rules required.

Nor can the Thingvalla be held in fault for porting. Her navigator saw a white light and both side lights, indicating an approaching steamer, so situated as to have her (the Thingvalla) ahead. He saw those lights, as he judged, about half a point on the port bow, a position from which (as the side light overlap a half point) the three lights of the Thingvalla would be visible to the approaching steamer, indicating to her that the Thingvalla had her (the Geiser) ahead. As the situation appeared to him, the steamers were meeting end on, or nearly so, and article 15 required him to alter his course to starboard. The respondent's counsel has argued most elaborately and ingeniously that the navigator of the Thingvalla was mistaken as to the situation; that the vessels were in fact on crossing courses, the Thingvalla having the Geiser on her starboard bow. If that were so, article 16 required the Thingvalla to keep out of the way, and allowed her to do so by altering her course to starboard, if that would accomplish the object, the Geiser holding her course. If the situation was as respondents claim, the Thingvalla was not in fault for porting. But it is further contended

that the Thingvalla should have stopped her swing to starboard, and swung to port, as soon as she saw, by the disappearance of the Geiser's red light, that she was swinging to starboard, and that there was risk of collision.    There is little to add to the comments of the learned district judge on this contention.    Looking at the situation after the event, it may be apparent that such a change of course would have avoided the collision; but the Thingvalla's navigation must be judged by the knowledge she had, or ought to have had, at the time.    Whether they were meeting, as her navigator believes, or crossing, as the respondents contend, the disappearance of her red light showed that the Geiser was changing her course in violation of the rules, which in the one case required her to port, and in the other to hold her course.    Whether or not she would realize that fact, and alter her helm accordingly, the navigator of the Thingvalla could not know.    An attempt on his own part to abandon the course, which the rules enjoined upon him in the one case, and permitted him in the other, might, so far as he knew, tend to produce the very mishap it was intended to avoid, by co-operating with a belated effort on the part of the Geiser to return to her true course, and he cannot, therefore, be held in fault for not taking the chance. He did what the rules required of him, when, seeing the mistaken maneuver of the Geiser, he stopped and reversed.

There is nothing in the suggestion of improper speed or insufficient lookout.    The vessels sighted each other at sufficient distance to avoid collision without any difficulty, had there not been improper navigation of the Geiser after sighting.    The decree is affirmed, with costs of this appeal to the petitioner against the appellants.