## THE TILLICUM.

## THE ROSALIE.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1916. Order Denying Rehearing, March 6, 1916.)

No. 2616.

COLLISION ⬅➡83—STEAM VESSELS IN FOG—VIOLATION OF RULES.

A tug with a tow on her side, extending ahead, came into collision with a meeting steamer in Puget Sound in a dense fog. Both vessels were sounding fog signals. The steamer, on hearing a signal ahead, stopped for a minute and then proceeded, but almost at once reversed on hearing another signal. The only lookout on the tug was in the pilot house. *Held*, that both vessels were in fault; the steamer for not stopping until she ascertained the position of the vessel ahead, as required by the rules, and the tug for not maintaining a proper lookout forward.

[Ed. Note.—For other cases see Collision, Cent. Dig. §§ 156, 167, 175; Dec. Dig. ⬅➡83.]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Suit in admiralty for collision by the Inland Navigation Company, as owner of the steamship Rosalie, against the towboat Tillicum; the Stimson Mill Company, claimant and cross-libelant. Decree against both vessels, dividing damages, and cross-libelant appeals. Affirmed.

For opinion below, see 217 Fed. 976.

Hughes, McMicken, Dovell & Ramsey, of Seattle, Wash., for appellant.

Ira Bronson, J. S. Robinson, and H. B. Jones, all of Seattle, Wash., for appellee.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

ROSS, Circuit Judge. There is practically no conflict in the testimony in regard to the cause of the collision which occurred between the freight and passenger steamer Rosalie, at the time making her regular night trip southward from Bellingham to Seattle, and the tug Tillicum, having in tow a barge made fast on her port side, and which was proceeding from the Standard Oil dock at the port of Seattle on her usual course towards Marysville, unless it be in respect to the speed of the Rosalie after she entered the heavy fog. The collision resulted in damage to both the libelant and cross-libelant, which was by the decree divided between them; the court having found both vessels in fault.

We think, from the evidence, that the trial court was substantially correct in thus stating the facts:

"The usual speed of the Rosalie was about 9½ knots per hour. She passed West Point Lighthouse about 5:05 a. m. At that time a very light fog prevailed, and the light at West Point was plainly visible. She was giving her regu-

lar fog signals, one prolonged blast of her whistle, at the usual intervals. About three minutes after passing West Point her lookout reported one whistle on the port bow, which was also heard by the mate, then on duty in the pilothouse. The engine was stopped, and the vessel drifted about a minute, and, hearing no further response to her whistle, she started ahead. Then another whistle was heard followed by a danger signal from the tugboat, which was answered by a like signal from the Rosalie. At this time the lights were seen a short distance ahead. The Rosalie, after giving the signal to go ahead, almost instantly gave the order to reverse. The tug Tillicum proceeded on her course in a thick fog which was prevailing. She gave her fog signals at the regular intervals, and as she proceeded along under Magnolia Bluff in the vicinity of Four Mile Rock she slowed down to about three miles an hour and endeavored to locate her position by the echoes from the bluff. After proceeding at this speed for about five minutes, having heard no whistle from other vessels, she got an echo of a long whistle from some object ahead of her. She immediately stopped her engine and drifted until her next whistle was given, when the echo from ahead was repeated, and also a danger signal immediately followed, and her engine was thereupon reversed. While the vessels were in this position the collision occurred. At the time of the collision, A. W. Anderson was master and pilot of the tugboat. Captain Charlesworth was acting as lookout from the pilot house. The scow's bow was from 12 to 30 feet forward of the bow of the tug. The bow of the tug was at least 12 feet forward of the pilot house."

Article 16 of the act of Congress entitled "An act to adopt regulations for preventing collisions at sea" provides, among other things, that:

"A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over." Act Aug. 19, 1890, c. 802, 26 Stat. 326 (Comp. St. 1913, § 7854).

In the present case, when the Rosalie first heard a whistle ahead, her engine was stopped for about a minute, during which time she drifted, and, hearing no response to the whistle she gave, was started forward; but her engine was almost immediately reversed—she having heard another whistle, followed by a danger signal from the Tillicum. In the dense fog then prevailing, the Rosalie, in our opinion, cannot be regarded as having been navigated with caution in being started ahead so quickly without ascertaining anything in regard to the location of the vessel whose whistle she had heard, and therefore violated the express provision of the statute above quoted, and was clearly in fault, whether or not she had theretofore proceeded with proper speed. Had the tug had a proper lookout, properly placed, no one can say whether, even with the bad navigation of the Rosalie, the latter might not have been seen or her whistles heard by the Tillicum, and the collision avoided. It appears that the master and pilot of the tug was navigating her at the time, and that her lookout, Capt. Charlesworth, was in the pilot house with him, where not only the opportunity of seeing and hearing was lessened, but where the attention of both lookout and pilot was liable to be, and may have been, distracted by conversation.

In the case of The Ottawa, 3 Wall. 269, 18 L. Ed. 165, many times referred to with approval, the Supreme Court said:

"Steamers are required to have constant and vigilant lookouts stationed in proper places on the vessel, and charged with the duty for which lookouts are required, and they must be actually employed in the performance of the duty to which they are assigned. They must be persons of suitable experience, properly stationed on the vessel, and actually and vigilantly employed in the performance of that duty. * * * Proper lookouts are competent persons other than the master and helmsman, properly stationed for that purpose on the forward part of the vessel; and the pilot house in the nighttime, especially if it is very dark and the view is obstructed, is not the proper place. * * * Lookouts stationed in positions where the view forward, or on the side to which they are assigned, is obstructed, either by the lights, sails, rigging, or spars of the vessel, do not constitute a compliance with the requirement of the law; and in general, elevated positions, such as the hurricane deck, are not so favorable situations as those more usually selected on the forward part of the vessel, nearer the stem. Persons stationed on the forward deck are nearer the water line and consequently are less likely to overlook small vessels, deeply laden, and more readily ascertain their exact course and movement."

And article 29 of the Regulations for Preventing Collisions upon Harbors, Rivers, and Inland Waters (Act June 7, 1897, c. 4, 30 Stat. 102 [Comp. St. 1913, § 7903]), declares:

"Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case."

We agree with the court below that the vessels in question were equally in fault, and that the damages were properly divided.

It is contended by the appellant that the damages paid for repairs on the Rosalie were excessive, but upon the record we do not think we would be justified in interfering with the amount.

The judgment is affirmed.

## Order Denying Rehearing.

PER CURIAM. Upon consideration thereof, it is ordered that the petition, filed March 2, 1916, on behalf of the appellant herein for a rehearing of the above-entitled cause be and hereby is denied. It is further ordered that the decree filed and entered in the above-entitled cause on the 7th day of February, 1916, be and hereby is amended so as to read as follows:

"The judgment of the court below having, according to the oral admission of the respective proctors, included by mistake one-half of the damages to the appellant's tug and tow, will be so modified as to omit therefrom said damages, and, as so modified, the judgment will stand affirmed."