## THE R. B. M. BURKE.

## THE COOPER'S POINT.

(District Court, E. D. Pennsylvania. January 22, 1924.)

No. 255.

1. **Collision ⊙80—Ferryboat held at fault, and barge free from contributory negligence.**

   Where a ferryboat crossing a river about a half mile wide lost its bearings in a heavy fog, and was 250 feet below its landing dock, and was drifting towards the dock with a flood tide, without using its engines, and within 25 or 30 feet of the pier heads, with its wheel hard aport, when it collided with a barge tied up to the end of the pier, *held*, that the ferryboat was at fault and the barge free from contributory negligence.

2. **Evidence ⊙67(1)—Presumed that light on barge remained during the night.**

   Evidence that a light was placed on a barge, when tied up at the end of a pier for the night, raises a presumption that it remained during the night.

3. **Collision ⊙100(1)—Boat off course must proceed with extraordinary caution.**

   A ferryboat, which in crossing a river in a fog discovered that she was off her course, should have proceeded with more than ordinary caution.

In Admiralty. Libel by one Gallagher, owner of the barge R. B. M Burke, against the ferryboat Cooper's Point. Decree for libelant.

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Willard M. Harris, of Philadelphia, Pa., for plaintiff.

Francis B. Biddle, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The libelant's vessel, R. B. M. Burke, is a sectional barge, about 120 feet in length and 23 feet beam. On the night of November 1, 1923, she was being towed down the river from Bordentown with a load of coal, the destination being the Schuylkill river. On account of the tide, the tug left her at Pier 42, North Wharves, Philadelphia, where she was tied up at the end of the pier to remain during the night. She was placed with her bow upstream and did not overlap either end of the pier, being about 5 feet distant from one side of the pier and about 10 feet from the other. When the tug left her, she was properly moored, and the barge captain was fixing the light for the night.

Early in the morning of November 2 a heavy fog fell. The ferryboat Cooper's Point, propelled by steam and carrying passengers and freight between Shakamaxon street, Philadelphia, and Vine street, Camden, had made two trips between those points, and, while making a third from Camden to Philadelphia, at about 7:30 a. m., collided with the forward section of the barge, causing substantial damage. In a fog such as prevailed that morning, the Cooper's Point was guided by the sound of a fog bell on the Shakamaxon street wharf. She had left her slip on the Camden side of the river at about 7:15, and proceeded under one bell or half speed across the river, sounding her whistle as required by law. When the lookout called, "Wharf ahead!" she stopped her engines and backed away from what proved to be the Baltimore & Ohio Pier, two piers below where the Burke lay, and at least 250 yards below her own dock.

The tide was flood, and the usual practice in running on a flood tide in a fog from Vine street to Shakamaxon street wharf is to cross the river to a point somewhat below the wharf, to drift upstream with the tide, and then proceed into the dock. On the morning in question, the master of the Cooper's Point apparently lost his bearings, for, although the distance is only approximately a half mile, he brought up on the Philadelphia side of the river at a point, as shown by the chart offered in evidence, more than 250 yards below his dock. After avoiding striking the Baltimore & Ohio Pier by backing off, the Cooper's Point straightened out with the stream and drifted with the tide within 25 or 30 feet of the pier heads, with her engine stopped and her wheel hard aport, as shown by the testimony of her master.

[1] When asked why, when the Burke was sighted through the fog, he did not put his wheel aport, the reason stated was that it was already aport in order to keep off from the pier heads. It thus appears that, drifting without using her engines, with her wheel hard aport, the Cooper's Point was skirting so close to the ends of the piers that she was not under such control as to be able to turn out into the stream in case a boat should be moored to the end of a pier. As she was drifting, the only possible method to avoid striking a vessel so lying, in addition to going astern, was by steering to starboard, and this she was unable to do, because she was drifting with a ported helm.

I can arrive at no other conclusion than that this was not such cautious navigation as is required under the circumstances, in a fog. It was not necessary for the Cooper's Point to keep so close to the pier heads, without the ability to so change her course as to avoid a collision. When she neared the Baltimore & Ohio Pier below, and backed away, she should have taken a course sufficiently out in the stream as not to require her wheel to be constantly ported to keep her away from the pier heads. She could, after drifting with the tide, have been guided into her dock through the sound of the fog bell at the end of her pier. It is evident, therefore, that the Cooper's Point was in fault.

As to the contributory negligence of the Burke, there was uncontradicted evidence on the part of the libelant that it is customary for barges to tie up at the end of piers, as was done with the Burke. The respondent proved regulation 20 promulgated by the Board of Commissioners of Navigation, which was also proved in the case of The Patricia v. The Columbia (just decided) 295 Fed. ——. For the reasons stated in that case, the regulation is held not to be a defense here, and, for the reason also stated in that case, it is held that there was no duty upon the part of the moored vessel to give notice of her location by sounding signals.

[2, 3] As to the presence of a light upon the Burke, her master died before his testimony could be taken. The master of the tug, however, testified that there was a light being placed upon her stream side when he left the barge, and there is a presumption that it remained during the night, which is all that is required. At all events, it is not shown that its absence in the daytime contributed to cause the collision. The Burke was not lying where she would obstruct any proper course of the Cooper's Point in running from Camden to the Shakamaxon street wharf. The Cooper's Point was off her course, and should have proceeded with more than ordinary caution under the circumstances.

A decree will be entered for the libelant for damages in the sum of $1,285, the cost of repairs, with interest, and $75 for detention for five days, at $15 a day, with interest and costs of suit.