CALIFORNIA TRANSPORT CORPORA-
TION, Appellant,

v.

THE Tug ACCENTOR, Etc., et al.,
Appellees.

No. 18702.

United States Court of Appeals
Fifth Circuit.

May 2, 1961.

C. D. Marshall, Charles Howard, Jr., New Orleans, La. (Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., of counsel), for appellant.

John Poitevent, New Orleans, La., Charles E. Dunbar, III, New Orleans, La. (Phelps, Dunbar Marks, Claverie & Sims, New Orleans, La., of counsel), for appellee.

Before CAMERON and WISDOM, Circuit Judges, and THOMAS, District Judge.

DANIEL HOLCOMBE THOMAS, District Judge.

Appellant, California Transport Corporation, owner of the super tanker T/S Gage Lund, brought suit in admiralty against the Tug Accentor and Clifford C. Northern, Jr., its owner and operator, for damages caused by a collision between the Lund and one of two barges being pushed by the Accentor. The trial court found that the sole fault for the collision must be attributed to the Lund, and accordingly dismissed the libel at libelant's cost.

At approximately 2119 hours on the night of August 29, 1958, the Lund left Quarantine Anchorage in the Mississippi River just below New Orleans, and proceeded upriver at half speed ahead. Her navigation was under the control of William P. King, pilot. The river at this point is about two thousand feet wide. The Lund favored the right descending bank of the river, maintaining a course parallel thereto, and about five hundred to six hundred feet out from the bank. It was a moonlit night and visibility was good. After getting under way, her pilot saw the Tug Accentor pushing two barges through the Industrial Canal toward the Mississippi River. The canal enters the Mississippi a little over a mile upriver and opposite from Quarantine Anchorage. When the tug was first observed, it was not known to the pilot whether she intended to proceed upstream or downstream in the river. When the Lund reached a position a little below and opposite the canal entrance, the tow entered the river and began turning upstream. Two blasts were sounded by the Lund, which went unanswered. At the same time, slow speed ahead was ordered, and her course was altered. approximately ten degrees to port to allow separation between the vessels. Further alteration to port was not pos--

sible as the Tug G&H, pushing one barge and headed downstream between the Gage Lund and the right descending bank of the river, was coming down directly ahead. One blast, unanswered, was given to the G&H, and half speed ahead was resumed. The Accentor and tow completed its swing into the river somewhat ahead and to starboard of the Lund. As the Lund drew even with the bow of the lead barge, the course of the Lund and the Accentor and its tow were approximately parallel, sixty to one hundred feet apart.

The above facts are as stated in almost identical language in the libel, and are practically undisputed. The cause of the collision presents the problem. When about two-thirds of the Lund had passed the lead barge of the tow, the pilot of the Lund ordered hard right rudder, and shortly thereafter the port bow corner of the lead barge struck the hull plating of the Lund in way of No. 10 starboard wing tank, damaging same. The captain of the Lund, as well as the pilot, contend that immediately prior to ordering the rudder of the Lund to hard right, the tow of the Accentor had begun to veer toward the stern of the Lund, and the hard right rudder maneuver was ordered to swing the stern of the Lund away from the tow. The captain of the Accentor insists that his tow was caused to collide with the Lund due to suction either from the speed of the Lund or from the hard right rudder maneuver.

The trial court concluded as follows:[1]

"Sole fault for this collision must be attributed to the Gage Lund. Her initial fault was charging into a crowded area of the Mississippi River in the harbor of New Orleans at the entrance to the Industrial Canal where cumbersome tows could be expected to be, and were, encountered leaving * * * the Canal. Then, instead of proceeding ahead slowly in the face of this unwieldy traffic moving in all directions in the river, this super tanker continued to make good seven knots in the face of a two-knot current. Because of the traffic, she was forced into close quarters with the tow of the Accentor, causing the head of that tow to be pulled by suction down on her starboard quarter."

The trial court further held: that seafarers are charged with the knowledge that tugs and tows are unwieldy and difficult to navigate and that due allowance must be made for these debilities; that the Gage Lund provoked simultaneously an overtaking situation with one tow and a passing situation with another, and under the circumstances assumed the risk of collision; that as the overtaking vessel she was bound to stay clear of the Accentor, which she failed to do, and for which she must be held solely at fault.

The appellant earnestly disagrees with the trial court's conclusions, the main criticisms being: (1) the condemning of the Lund in proceeding at a speed of seven knots; (2) the applying of the overtaking rule; and (3) the failing to find that the Accentor provoked a collision situation in entering the river and executing the turn she did, knowing of the position of the Lund.

We have carefully studied the record and think that it clearly supports the conclusions of the trial court. In fact, we think the record will not permit of any different interpretation. The case is accordingly affirmed.[2]

1. California Transport Corporation v. The Accentor, D.C., 183 F.Supp. 817, 819.

2. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, 1954 AMC 1999.