A form of order is to be submitted.

**Collins A. LINER**

v.

**CREWBOAT MR. LUCKY, its engines, tackle, apparel, furniture, etc. and Kenneth and Alex Plaisance.**

**No. 7649.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 7, 1967.

Lemle & Kelleher, by George A. Frilot, III, New Orleans, La., for plaintiff.

James H. Roussel, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendants.

MITCHELL, District Judge.

This action arises out of the collision of the Crewboat, *Miss Connie Francis*, and the Crewboat, *Mr. Lucky*, on the morning of February 8, 1965. The *Miss Connie Francis* sank as a result of the collision and her owner, Collins A. Liner, filed a libel against the *Mr. Lucky* and her owners, Kenneth and Alex Plaisance, to recover for the loss of the vessel.

This case was tried on August 18, 1967. After considering the pleadings, evidence and arguments of counsel, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1.

At all times hereinafter mentioned, plaintiff, Collins A. Liner, was a person of the full age of majority and a resident of Gretna, Louisiana, and was the owner of the C/B *Miss Connie Francis*, a documented vessel of the United States, Official Number 288026, register dimensions: length 36.8 feet; breadth, 12.0 feet; and depth, 6.0 feet. The vessel was a twin screw, diesel powered, steel crewboat of 450 horsepower and capable of making a maximum speed of 28 miles-per-hour.

2.

At all times hereinafter mentioned, defendants, Kenneth and Alex Plaisance, were persons of the full age of majority

and residents of Golden Meadow, Louisiana, and were the owners of the C/B *Mr. Lucky*, a documented vessel of the United States, Official Number 287817, register dimensions: length, 52.0 feet; breadth, 14.3 feet; and depth, 6.8 feet. The vessel was a twin screw, diesel powered, steel crewboat of 1200 horsepower and capable of making a maximum speed of 28 miles-per-hour.

### 3.

On February 8, 1965, at about 10:00 AM, the C/B *Miss Connie Francis* departed Venice, Louisiana bound for a quarterboat located in Main Pass of the Mississippi River. The weather was clear and visibility was unlimited so the crewboat was proceeding at full speed maintaining a course parallel to and approximately 75 feet from the right descending bank. Captain Ronald Crochet was at the helm of the *Miss Connie Francis* and there were four passengers aboard, none of whom were employees of the plaintiff, Collins A. Liner.

### 4.

Approximately 10 or 15 minutes after leaving Venice, the *Miss Connie Francis*, downbound in the Mississippi River, encountered fog and Captain Crochet reduced the speed of the vessel to 3 to 5 miles-per-hour, continuing downriver in a southeasterly course. He stationed one of the passengers on the starboard side of the *Miss Connie Francis* to act as a lookout.

### 5.

Captain Crochet testified that he was navigating in the fog for approximately 5 minutes prior to the collision which followed and during that period had sounded three fog signals in response to fog signals from a larger vessel ahead.

### 6.

Because the *Miss Connie Francis* was not equipped with radar and visibility was estimated to be 50 feet from the wheelhouse or forty feet from the bow of the vessel, Captain Crochet would periodically run the vessel into the bank to be certain the vessel was in close proximity to the right descending bank. While so navigating, the *Miss Connie Francis* was overtaken and struck on her port side amidships by the downbound *Mr. Lucky*. The force of the collision was sufficient to damage the *Miss Connie Francis* to such an extent that she began to sink. The *Mr. Lucky* pushed the damaged *Miss Connie Francis* across the river to shallow water, but within 20 minutes following the collision, the *Miss Connie Francis* sank and only the upper parts of her pilothouse remained visible above the surface of the water.

### 7.

There had been no warning of the approach of the *Mr. Lucky* from astern. No whistle signals were sounded by the *Mr. Lucky* proposing a passing. While the testimony of those persons aboard the *Mr. Lucky* indicates that that vessel might have been sounding fog signals, no signals were heard by those aboard the *Miss Connie Francis*.

### 8.

The helmsman aboard the *Mr. Lucky* was John Delatte, a deckhand who acknowledged that he had never operated a crewboat other than on one or two occasions aboard the *Mr. Lucky* when he was at the helm for short periods while the master or operator was occupied elsewhere. Like the *Miss Connie Francis*, the *Mr. Lucky* had departed Venice on the morning of February 8, 1965 during daylight hours. However, Delatte was not at the helm when the crewboat left Venice but was at his customary station in the wheelhouse where the master of the vessel, Kirby Terrebonne, was handling the wheel. The *Mr. Lucky* proceeded downriver at top speed—between 24 to 28 miles-per-hour for a period estimated by Delatte to have been one-half hour. The weather was clear and visibility was unimpeded. As the vessel continued downriver, Captain Terrebonne noticed a fog bank ahead and, realizing it would be necessary to use the radar, he reduced the vessel's speed to approximately 13 miles-per-hour and gave the wheel to Delatte so that he,

Terrebonne, could observe the radar. Visibility was estimated to be about 20 feet from the bow of the vessel.

## 9.

Captain Terrebonne immediately sighted a vessel ahead on the radar screen. According to Delatte, the sighting of this vessel was reported to him approximately 20 minutes before the collision. During that period, Delatte testified without equivocation that he never made a change in either the course or the speed of the *Mr. Lucky*. On the contrary, the *Mr. Lucky* continued ahead at a speed of 13 or 14 miles-per-hour until Delatte sighted the *Miss Connie Francis* no more than 10 to 15 feet ahead. In the instant between that sighting and the collision, Delatte pulled his controls back but had no opportunity to reverse his engines or take other evasive action. He stated there was no significant reduction in the speed of his vessel prior to the impact. He candidly admitted that he had sounded no passing signals whatsoever and had heard no signals from the vessel with which the *Mr. Lucky* collided.

## 10.

Captain Crochet, of the *Miss Connie Francis*, estimated the angle of collision to have been 45 degrees. Captain Terrebonne, of the C/B *Mr. Lucky*, testified that the angle of collision was 90 degrees. The witness Delatte refused to estimate the angle of collision, but the sketch identified as Plaintiff Exhibit No. 1, which Delatte had drawn at the time of his discovery deposition, clearly reflects the angle to have been approximately 45 degrees. The Court finds as a fact that the *Miss Connie Francis* was struck by the *Mr. Lucky* at approximately that angle (45 degrees), from astern.

## 11.

Captain Terrebonne admitted that, although he observed the *Miss Connie Francis* on the radar screen, he nevertheless maintained a course of 150 feet off the right descending bank and only 75 feet outriver from the vessel ahead.

Without reduction in speed, without proposing an overtaking, without any warning to the *Miss Connie Francis*, the *Mr. Lucky* continued ahead at some 13–14 miles-per-hour until some 15 feet before the collision. Terrebonne testified that, just before the collision, he lost the *Miss Connie Francis* on the radar screen and told Delatte to slow down because "she is right across our bow". Delatte, however, denied receiving such advices and, without equivocation, stated that he had no warning of the danger of collision until he sighted the *Miss Connie Francis* some 10 or 15 feet ahead. The Court finds Delatte's version the more credible.

## 12.

The Court finds as a matter of fact that the sole and exclusive cause of this collision was the gross and inexcusable fault of the *Mr. Lucky* in proceeding at excessive speed in fog, with certain knowledge that a vessel was navigating immediately ahead of her position in the river; in attempting to overtake and pass the *Miss Connie Francis* without exchanging passing signals; and in failing to take any reasonable action to avoid a collision under circumstances where the danger of collision was readily apparent.

## 13.

The Court further finds that there were no faults on the part of the *Miss Connie Francis* which could possibly have contributed to the collision.

True, the evidence demonstrates that Captain Crochet did not hold a current license on February 8, 1965, but the testimony likewise demonstrates that he was an experienced boat operator (having operated such vessels for approximately 10½ years) who had been licensed but had permitted his license to expire. Further, the evidence indicates that Captain Crochet was sounding fog signals at an estimated interval of somewhere between just over one minute and as much as three minutes but, as previously stated, these signals were sounded in response to fog signals from a larger vessel ahead. The Court finds that Captain Crochet's estimate of the interval be-

tween signals was a sincere effort to be truthful rather than a blind adherence to the interval prescribed by the rule. On the basis of the evidence presented at the trial, the Court believes the interval to be very close to one minute. In any event, the Court finds that the sounding of fog signals at a closer interval could not possibly have avoided the collision.

In the pilothouse of the overtaking *Mr. Lucky* were two men—the inexperienced helmsman who was taking no action without specific command from the master—and the master, whose attention was directed solely to the radar screen. Neither man heard fog signals from any vessel because their attention was not focused on signals from vessels in the area.

### CONCLUSIONS OF LAW

#### 1.

This Court has jurisdiction of this action and venue is properly laid in the Eastern District of Louisiana. 28 U.S.C. § 1333.

#### 2.

■■ The collision between the *Miss Connie Francis* and the *Mr. Lucky* was caused by the sole fault of the *Mr. Lucky* whose faults were gross and inexcusable.

#### 3.

The *Mr. Lucky* was at fault for failing to proceed at a moderate speed in fog which substantially reduced visibility. 33 U.S.C. 192.

#### 4.

The *Mr. Lucky* was at fault for proceeding at excessive speed so that she was unable to stop within one-half of the visible distance ahead. The Percheron v. Alabama Transit Company, (CA 5–1957) 246 F.2d 135. As the overtaking vessel, this rule was applicable to her.

#### 5.

The *Mr. Lucky* was at fault for failing to sound passing signals in an overtaking situation, where it was her duty to keep clear of the vessel being overtaken. 33 U.S.C. § 209. The *Mr. Lucky*, being the overtaking vessel, is presumed to be at fault and she bears the burden of proving herself free of fault. Pilot Rules of Inland Waters, Article 29, 33 U.S.C. § 221; The Percheron v. Alabama Transit Company, supra.

#### 6.

■ The defendants contend that the *Miss Connie Francis* suddenly turned to port and across the bow of the approaching *Mr. Lucky*. The Court finds no credible evidence upon which to base such a finding, but even if such had been the case, the *Mr. Lucky* must be held solely at fault for approaching and attempting to pass at such close proximity of the overtaken vessel as to assume the risk of collision, 33 U.S.C. § 209; California Transport Corporation v. The Accentor, D.C., 183 F.Supp. 817; 289 F.2d 822 (CA 5–1961).

#### 7.

■ If an overtaking vessel, without proper signals, comes so close to the overtaken vessel that a sudden change of course by the latter may bring about a collision, the fault is that of the overtaking vessel. The M. J. Rudolph (CA 2–1923) 292 F. 740.

#### 8.

■ Respondent admits the *Mr. Lucky* was guilty of certain statutory faults but contends that the *Miss Connie Francis* also violated certain statutory rules and, being guilty of statutory faults, it was incumbent upon libelant to prove that these faults did not contribute to the collision, failing in which the *Miss Connie Francis* is bound to divide damages.

Because of the excessive speed of the *Mr. Lucky* and the limited visibility, there was nothing the *Miss Connie Francis* could have done to avert the catastrophe. Any faults of the *Miss Connie Francis* were negligible. The Supreme Court in The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148, did not intend to establish a hard and fast rule that every vessel guilty of a statutory fault has the burden of establishing that its fault could not by any stretch of the

imagination have had any causal relation to the collision, no matter how speculative, improbable, or remote. Warrior and Gulf Navigation Co. v. S/S Steel Voyager, (E.D. La.–1964) 237 F.Supp. 200.

9.

■ Finally, even if the Court were to have found fault with the navigation of the *Miss Connie Francis*, it is clear that her fault was merely technical. The law is clear that where one vessel may be guilty of a non-contributing fault during the events leading up to a collision, she will be exonerated or excused under the rule of major-minor fault. This has been true in overtaking situations where vessels were navigating in fog. The Percheron v. Alabama Transit Company, supra; Eymard v. Bonnie Ruth, (ED La.–1954), 120 F.Supp. 67.

10.

Let judgment be entered in favor of plaintiff, Collins A. Liner, and against defendants, Alex and Kenneth Plaisance and the *Mr. Lucky*, for plaintiff's damages, with interest from February 8, 1965, and all costs of these proceedings.