**CLARY TOWING COMPANY, INC.**

v.

**PORT ARTHUR TOWING COMPANY, in personam, the TUG SYDALISE CRAWFORD, OFFSHORE BARGE PATCO 100, their engines, tackle, furniture, apparel, etc. in rem.**

**Civ. A. No. 7787.**

United States District Court,
E. D. Texas,
Beaumont Division.
Nov. 21, 1973.

**8**

------◆------

Hubert Oxford, III, Benckenstein, McNicholas, Ball, Oxford & Radford, Beaumont, Tex., for plaintiff.

Thomas A. Brown, Brown & Teed, Houston, Tex., for defendant.

## MEMORANDUM DECISION

STEGER, District Judge.

This suit in admiralty arose out of a collision in which the tug MORGAN CITY was hit from the rear by the offshore barge PATCO 100 being pushed by the Tug SYDALISE CRAWFORD. The collision occurred on a clear, dark night at 12:30 a. m. on May 26, 1972, on the Sabin-Neches Waterway just west of the old Pleasure Island Bridge near Port Arthur, Texas.

As a result of the collision, the plaintiff, Clary Towing Company, as owner of the Tug MORGAN CITY instituted this action for damages in the amount of $125,000.00 against the defendants, Port Arthur Towing Company *in personam*, and the Tug SYDALISE CRAWFORD and the offshore barge PATCO 100 *in rem*.

The plaintiff, Clary Towing Company, alleged in its complaint that the defendant was negligent or that its vessels were unseaworthy for the following reasons: (1) incompetent pilot; (2) improper lookout; (3) excessive speed; (4) malfunctioning radar; (5) no lookout on bow; (6) failure to observe the plaintiff's lights; (7) failure to reverse engines in time; (8) failure to avoid the plaintiff; and (9) the defendant could not see over his tow. The defendant answered contending the collision was the sole fault of the plaintiff because: (1) the MORGAN CITY was improperly lighted or not lighted; (2) the plaintiff had an incompetent pilot; (3) the plaintiff failed to sound a danger signal and (4) there was no lookout astern.

### Narrative Statement

The MORGAN CITY, a steel hull, twin screw tug measuring 51 feet in length and 17 feet in width pushing in tandem two fully loaded Texaco barges, the TEXACO 800 and the TEXACO 799, left the Texaco Docks at 11:15 p. m. on May 25, 1972, and proceeded in an easterly direction on the waterway. The tug was making about three miles per hour bucking a tide of approximately two miles per hour.

The tug SYDALISE CRAWFORD with the barge PATCO 100 on its head was proceeding behind the plaintiff's tow at between eight and ten miles per hour. The SYDALISE CRAWFORD is a steel hull, twin screw, vessel measuring 85 feet in length and 24.8 feet in width. The PATCO 100, a large barge used in transporting industrial wastes offshore to be dumped, is approximately 250 feet long and 54 feet wide. The barge was empty at the time of the collision so it was riding about fifteen to twenty feet out of the water with a high forward rake.

The Court finds that at the time of the collision, there was no lookout on duty on the SYDALISE CRAWFORD, nor did the vessel sound any warning signals prior to impact.

The MORGAN CITY was manned by a four man crew, with Captain Thurman Doyle and Deckhand James McCollough standing watch between 6:00 p. m. and 12:00 midnight, the night of the collision and Relief Master Vernon Perkins and Deckhand Robert Hudnall assuming the watch at 12:00 midnight. Both Doyle and McCollough testified that all

the lights were burning on the MORGAN CITY when they left the Texaco docks and also at 12:00 midnight when they retired for the evening. When Perkins and Hudnall took over the watch on the MORGAN CITY at midnight, they also said they noticed the lights burning, forward and aft.

The traffic was heavy on the waterway that night. Between 12:00 midnight and the time of the collision at 12:30 a. m., the plaintiff's tow passed two tugs traveling west on the waterway, the ENTERPRISE and the LINDA ELLIS and was approaching a third, the GREEN RIVER GAL. The MORGAN CITY made radio contact with the ENTERPRISE and the LINDA ELLIS and they sounded passing whistles. Shortly after the exchange with the LINDA ELLIS, the plaintiff's tug was overtaken from the rear by the SYDALISE CRAWFORD with the PATCO 100 on its head. The PATCO 100 was pushed all the way up to the wheelhouse of the MORGAN CITY causing severe damage to the structure of the tug and its radio and electrical systems. The PATCO 100 was quickly backed off the tug and the plaintiff's crew boarded the SYDALISE CRAWFORD.

### Lights on the MORGAN CITY

The defendant's principal contention, as in so many collision cases, was that the MORGAN CITY failed to show any running lights on the occasion in question. On this point the Court disagrees and finds that the MORGAN CITY was displaying adequate and proper running lights at the time of the collision. The evidence supports this conclusion.

As noted previously, all members of the MORGAN CITY's crew testified that the running lights were functioning properly prior to the collision. In this regard the rule in this circuit is that,

"Positive testimony by those on the tug, who rigged up the lights and were in a position to see them and know of their condition will not be lightly rejected because other persons whose duty it was to have seen them either failed to observe or happened not to see them. Negative evidence of this character cannot be accepted to outweigh positive evidence. The failure to observe a light does not disprove its existence."

Socony-Vacuum Oil Co. v. Smith, 179 F. 2d 672, 675 (5th Cir. 1950); The Thingvalla, 48 F. 764 (2d Cir. 1891); The Richmond, 114 F. 208 (E.D.Va.1902); Sun Oil Co. v. S. S. Georgel, 245 F.Supp. 537, 546 (S.D.N.Y.1965).

In the instant case, positive testimony was also provided by the pilot of the LINDA ELLIS, William Hassel. He testified that the LINDA ELLIS passed when the defendant's tow was about three-fourths to one mile behind the MORGAN CITY. Although he was not in a position to see the stern lights, he testified that the other lights were showing properly. This was approximately ten to fifteen minutes before the collision.

Once the plaintiff has shown that the proper lights were burning when the MORGAN CITY left the Texaco docks, then they have the benefit of the presumption that the lights continued burning until the time of the collision. Sun Oil Company v. S. S. Georgel, supra at 546; G. W. Sheldon & Co. v. Hamburg Amerikanische P-A-G, 28 F.2d 249, 252 (3rd Cir. 1928); The R. B. M. Burke, 294 F. 987 (E.D.Pa.1924); Hess Tankship Company v. S. S. M. L. Gosney, 230 F.Supp. 1 (E.D.Va.1963).

The Court finds that on the issue of the MORGAN CITY's lights, the decisive testimony was provided by a disinterested witness called by the defendant, Lester Hobbs. Hobbs was the pilot of the GREEN RIVER GAL, the tug that was traveling in a westerly direction on the waterway behind the LINDA ELLIS.

Hobbs testified that as he approached the MORGAN CITY from the opposite direction on the waterway, he first no-

ticed the lights on the plaintiff's barges. As he got closer, he saw that the plaintiff's tug was lacking any running lights, so he immediately radioed the SYDALISE CRAWFORD to warn him of the danger. Under questioning by the Court, he testified as follows:

"Q. And did he—was his immediate response—what was his immediate response to your first communication?

"A. I was telling him about the boat didn't have no lights, and he said, 'Well, I just tapped the MORGAN CITY. I might have been the cause of his lights—generator being out,' or something like that."

The Court finds that when the GREEN RIVER GAL observed that the MORGAN CITY was without running lights, the collision had already taken place. The impact severed the electrical wiring on the MORGAN CITY, causing the vessel to be without any of its running lights.

There was some evidence brought out on cross examination of Vernon Perkins, the pilot of the MORGAN CITY, which would tend to show that the MORGAN CITY lacked the proper screening on its stern lights. The Court finds that on the occasion in question any defects in the shielding of the running lights on the MORGAN CITY amounted to a technical minor fault which did not contribute to the collision. See Compania De Maderas De Caibarien, S. A. v. The Queenston Heights, 220 F.2d 120, 123 (5th Cir. 1955), cert. den. 350 U.S. 824, 76 S.Ct. 52, 100 L.Ed. 736 (1955); Rosado v. Pilot Boat No. 1, 304 F.Supp. 49, 53 (D. P.R.1969).

### Fault of the SYDALISE CRAWFORD and the barge PATCO 100

After reviewing the testimony of the parties and witnesses, the exhibits, pleadings and applicable statutes, the Court is of the opinion that the defendant's fault is so gross that it is sufficient to account solely for the collision. Therefore, any doubts about the contributory fault of the plaintiff are to be resolved in his favor. The City of New York, 147 U.S. 72, 13 S.Ct. 211, 37 L.Ed. 84 (1893); Socony-Vacuum Co. v. Smith, supra at 674 of 179 F.2d; Petition of Harbor Towing Corporation, 310 F.Supp. 775, 784 (D.Md.1970).

In the instant case, the SYDALISE CRAWFORD and the PATCO 100 committed positive breaches of statutory requirements. In such a situation *The Pennsylvania* rule is applicable so it is incumbent upon the defendant to show not only that their vessel's fault, "might not have been one of the causes, or that it probably was not, but that it could not have been." The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 136, 22 L.Ed. 148 (1873); The Andros Shipping Co. Ltd. v. Panama Canal Company, 298 F.2d 720, 727–728 (5th Cir. 1962); Afran Transport Co. v. The Bergechief, 274 F. 2d 469, 473–474 (2d Cir. 1960).

A. Violation of Title 33, U.S.C., Section 209.

Title 33, U.S.C., Section 209 provides in pertinent part:

"Notwithstanding anything contained in these rules, every vessel overtaking any other should keep out of the way of the overtaken vessel."

It was undisputed that the SYDALISE CRAWFORD was the overtaking vessel and the MORGAN CITY was the overtaken vessel. As such, the defendant had a statutory duty to stay clear of the plaintiff which he failed to do. Consequently, the SYDALISE CRAWFORD is presumed to be at fault and has the burden of proving otherwise. Liner v. Crewboat Mr. Lucky, 275 F.Supp. 230 (E.D.La.1967); Sun Oil Co. v. M/V Wartenfels, 250 F.Supp. 244 (E.D.Pa. 1966).

The defendant has not sustained his burden under Section 209 and the Court finds that this statutory fault was a direct and proximate cause of the collision.

The Court further finds that the MORGAN CITY did not change directions, speed up or veer sharply prior to the collision so the plaintiff was not guilty of any improper maneuvering which contributed to the collision.

B. Violation of Title 33, U.S.C., Section 221.

The pilot of the SYDALISE CRAWFORD testified that there was no lookout on the bow or in the wheelhouse of his vessel at the time of the collision. The Inland Rules provide as follows:

"Section 221. Usual additional precautions required generally (Art. 29).

"Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals *or of any neglect to keep a proper lookout,* . . ." (Emphasis added). 33 U.S.C.A., Sec. 221.

Generally, a lookout is a person other than the pilot who has the duty of observing sounds, lights, echoes and obstructions to navigation and he is generally stationed on the bow of the vessel. The Ottawa, 70 U.S. (3 Wall.) 268, 273, 18 L.Ed. 165 (1865); G. B. Zigler Co. v. Barker Barge Line, 167 F.2d 676, 678 (5th Cir. 1948); The Tillicum, 217 F. 976 (W.D.Wash.1914), aff'd. 230 F. 415 (9th Cir. 1916). The requirement of a lookout rests on the common usages of navigation as well as on general considerations of prudence. The Sea Gull, 90 U.S. (23 Wall.) 165, 23 L.Ed. 90 (1874).

A lookout is especially required in this case because the vessels were running in heavy traffic on a canal at night. The Oregon, 158 U.S. 186, 193, 15 S.Ct. 804, 39 L.Ed. 943 (1895). The rule of maintaining a lookout is one of the strictest requirements in the law of admiralty. Moran Scow Corporation v. S. S. Boston, 342 F.Supp. 216, 239 (S. D.N.Y.1972).

The PATCO 100 was an unusually large barge which had several obstructions on its deck. There was a pumphouse on the stern that was some ten feet high and a manifold on the bow that was about four feet high. These obstructions made it difficult to see out of the wheelhouse. Disinterested witnesses, William Hassel and Raymond Lee, both testified that the size of the barge and its forward rake would completely "cover up" the SYDALISE CRAWFORD. Under these circumstances, a lookout was essential.

The Court finds that the lack of a proper lookout on the SYDALISE CRAWFORD constituted negligence and was a proximate cause of the collision.

The defendant complains that the plaintiff was also at fault, because they failed to keep a proper lookout astern. The rule appears to be that there is no general duty to keep a constant watch astern where the vessel is showing the proper lights and does not change directions or speed. Ellis Towing & Transportation Co. v. Socony Mobil Oil Co., 292 F.2d 91, 95 (5th Cir. 1961); Sun Oil Company v. M/V Wartenfels, supra at 248 of 250 F.Supp. The MORGAN CITY was correct in assuming that the defendant's tow would pass safely and stay clear. The overtaken vessel is the privileged one and the overtaking vessel assumes the inherent risks in passing.

C. Violation of Title 33, U.S.C., Section 203, Rule VIII.

Rule VIII of Section 203 provides that when the overtaking vessel desires to pass on the starboard side of the lead vessel, he shall give one blast of the whistle and if he desires to pass on the port side, two blasts should be given.

It was conceded by the pilot of the SYDALISE CRAWFORD that no whistle signals were blown prior to the collision. This amounted to a statutory fault on the part of the defendant, and as stated previously, they have the burden of showing that the fault could not have contributed to the collision. See Sinclair Refining Co. v. The Morania Dolphin, 272 F.2d 192 (2d Cir. 1959). The defendant did not sustain its burden

in this regard. The failure of the defendant to sound passing signals was a proximate cause of the collision.

■ The defendant contends that the plaintiff was at fault for failing to sound a danger signal. It is true that the overtaken vessel is under an obligation to sound a signal when danger is apparent. The Howard, 256 F. 987 (4th Cir. 1919). However, in the case at bar the MORGAN CITY did not realize that danger was apparent until she was hit from the rear by the PATCO 100. It was quite impossible for her to sound danger signals at that time because the whistle hoses were severed as was the electrical wiring.

D. Radar

■ The Court finds that the SYDALISE CRAWFORD was equipped with two radar sets, neither of which was in use at the time of the collision. If radar was properly used, the SYDALISE CRAWFORD would have been able to calculate the presence, bearing and speed of the plaintiff's tow. Griffin on Collision, 333. The recent cases require the use of *properly functioning* radar at night or in low visibility areas. Afran Transport Company v. The Bergechief, supra; British Transport Commission v. United States, 230 F.2d 139 (4th Cir. 1956); Moran Scow Corporation v. S. S. Boston, supra; In re Cenac Company, 276 F.Supp. 317 (E.D.La.1967); Maroceano Compania Naviera, S. A. v. S. S. Verdi, 312 F.Supp. 489 (S.D.N.Y.1970).

However, the evidence in this case shows that the radar units were not operating due to a bearing failure in the radar power supply motor which occurred when the vessel was in the vicinity of Texaco Island. This failure happened prior to the time that the SYDALISE CRAWFORD would have observed the MORGAN CITY on its radar sets. Under these circumstances the Court finds that the radar failure was not a proximate cause of the collision,

### Conclusion

In conclusion, the Court finds that the statutory violations and negligence on the part of the defendant were the sole cause of the collision in question. The defendant must be held liable for the collision.

### Damages

■ In maritime collision cases the injured party is entitled to full compensation and indemnity for what he has lost, including loss of use while the vessel is being repaired. Continental Oil Company v. S. S. Electra, 431 F.2d 391, 392 (5th Cir. 1970). In the present case, loss of use was stipulated by the parties to be $300.00 a day, and the Court finds that the MORGAN CITY was used seven days a week.

■ The Court is of the opinion that the plaintiff should be allowed damages for cost of repairs and loss of use in accordance with the lowest total bid received, which was Gulfport Shipyards. The Court finds that the plaintiff is entitled to recover from the defendant $61,220.00 in repair costs, plus $11,100.00 in loss of use.

In addition the Court finds the following items properly recoverable:

| | | |
|---|---|---|
| (1) Repair radio and radar | | $4,585.00 |
| (2) Items lost overboard | | 450.00 |
| (3) Drydocking for survey | | 312.00 |
| (4) Cost of survey | | 561.90 |
| | Total | $5,908.90 |

In total, Clary Towing Company, Inc. should recover of and from the defendant, its damage in the sum of Seventy-Eight Thousand, Two Hundred Twenty-Eight and 90/100 ($78,228.90) Dollars, together with interest thereon from May 26, 1972, to date of payment, at six per cent (6%) per annum, and all costs of Court.

Judgment shall be entered in accordance with the findings made by the Court herein.