**MIDLAND ENTERPRISES, INC.**

v.

**The TUG DENNIS HENDRIX.**

**Civ. A. Nos. 80–3609, 81–305.**

United States District Court,
E. D. Louisiana.

Aug. 9, 1982.

---

Mark L. Ross, Machale A. Miller, New Orleans, La., for plaintiff.

Donald L. King, New Orleans, La., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

1. Midland Enterprises, Inc. (Midland) is a foreign corporation and the owner and operator of the inland river towboat M/V RITA and the barges OR 3220, OR 3143, OR 3182 and OR 3562.

Panther Marine Service, Inc. (Panther) is a Louisiana corporation and employer of Robert Costilow, the pilot of the M/V RITA at the time of the accident.

American Commercial Barge Line (ACBL) is a foreign corporation doing business in the navigable waters of the State of Louisiana. At all material times, ACBL was the operator of the inland river towboat M/V DENNIS HENDRIX.

Bunge Corporation (Bunge) is a foreign corporation doing business upon the navigable waters of the State of Louisiana and at all material times was the owner of BUNGE 53, a barge in the tow of the M/V DENNIS HENDRIX.

2. In civil action 80–3609, plaintiff, Midland, seeks recovery of collision damages. In the consolidated civil action 81–305, Midland is the defendant to the claim of Bunge for collision damages and the third party plaintiff against ACBL for said damages.

3. On August 9, 1980, at approximately 1:30 p. m., the Midland towboat M/V RITA was proceeding southbound around Brilliant Point at approximately mile 160, Mississippi River. The M/V RITA had the four barges OR 3220, OR 3143, OR 3182 and OR 3562 in its tow and was proceeding at approximately six miles per hour.

4. ACBL's towboat, the M/V DENNIS HENDRIX, was proceeding northbound, favoring the right descending bank. The M/V DENNIS HENDRIX was pushing a tow consisting of 16 empty barges and 2 loaded barges. The barges were arranged in two rows of three and three rows of four. The Bunge-53 was located on the starboard point of the tow.

5. Captain Dennis Clendenion was on duty as the pilot of the M/V DENNIS HENDRIX and was stationed in the pilothouse at the time of the collision. Captain Robert Costilow was engaged as the pilot of the M/V RITA. Captain Clendenion was the only eyewitness to the collision who testified at the trial of this matter.

6. As the M/V DENNIS HENDRIX approached Brilliant Point, pilot Clendenion stated that he attempted to contact downbound traffic by radio but received no response.

7. Clendenion testified that he first observed the M/V RITA as it rounded Brilliant Point and calculated that the vessels were between one-half mile to a mile apart. Clendenion attempted to contact the M/V RITA by radio to arrange a starboard to starboard passing. Having received no response from the M/V RITA, Clendenion blew two whistles to confirm the starboard to starboard passing.

8. Clendenion testified, and the VTS tape verifies, that immediately prior to the collision pilot Costilow stated over the radio that he had blown one whistle in order to conduct a port to port passing. Clendenion maintained that he had not heard any signals from the M/V RITA.

9. As it became apparent that the M/V RITA was not going to execute a starboard to starboard passage, Clendenion blew a four whistle danger signal and put his engines in reverse.

10. The M/V RITA continued to navigate towards the right descending bank and struck the Bunge-53, the starboardmost bow barge in the tow of the M/V DENNIS HENDRIX. The Bunge-53 sank and was subsequently moored to the shore by cable.

11. Prior to, and at the time of the collision, Clendenion did not use his radar to detect the presence of "downbound traffic." However, the failure to use radar did not materially contribute to the cause of the collision.

## Conclusions of Law

1. This court has jurisdiction pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure. Venue is proper in the Eastern District of Louisiana.

2. The instant case is governed by the Navigation Rules of Red River of the North, and Rivers Emptying in the Gulf of Mexico and Tributaries (Western Rules) 33 U.S.C. § 301 et seq. (1976).

3. The Western Rules provide that when an ascending vessel is approaching a descending vessel, the pilot of the ascending vessel shall give the first signal for passing. The pilot of the descending vessel must answer using the same signal if he deems the passing arrangement safe. 33 U.S.C. § 343(b) (1976). Here, pilot Clendenion, aboard the M/V DENNIS HENDRIX, the ascending vessel, blew two whistles to establish a starboard to starboard passing situation. This signal was not acknowledged by the M/V RITA. The evidence indicates that the M/V RITA, the descending vessel, blew one whistle in an attempt to establish a port to port passing situation with the M/V DENNIS HENDRIX. To do so was in contravention of the Western Rules requiring the ascending vessel to blow the first whistle signal.

Rule 18 places the burden on the descending vessel to blow a danger signal if the passage chosen by the ascending vessel is deemed dangerous. *Id.* The failure of the M/V RITA to comply with these rules materially contributed to the cause of the collision. *The PENNSYLVANIA*, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148 (1874); *Liner v. Crewboat Mr. Lucky*, 275 F.Supp. 230, 234 (E.D.La.1967).

4. The collision occurred at approximately one mile past Brilliant Point. The location of the collision indicates that the pilots should have adhered to the Point Bend rule. Under this judicially recognized custom, the ascending vessel is required to come up under the points and the downbound vessel runs the bends. *Board of Commissioners of the Port of New Orleans v. M/V FARMSUM*, 574 F.2d 289, 295 (5th Cir. 1978). In this case, adherence to the Point Bend rule required the RITA to favor the channel line and in so doing a safe starboard passing could have been completed. Failure of the M/V RITA to comply with the Point Bend custom was an integral cause of the collision.

5. As the likelihood of collision became imminent, both vessels were under a duty to slacken speed or, if necessary, stop and reverse. 33 U.S.C. § 346 (1976). If a pilot's signals have been disregarded by an approaching vessel, the pilot is bound to stop headway *promptly* and sound for danger. *The NEW YORK*, 175 U.S. 187, 206, 20 S.Ct. 67, 74, 44 L.Ed. 126 (1899); *Gulfcoast Transit Co. v. M/S KYUNG–JU*, 343 F.Supp. 867, 871 (E.D.La.), *aff'd*, 469 F.2d

1405 (5th Cir. 1972). Thus, Clendenion was under a duty to reduce headway or stop when he realized that the M/V RITA had disregarded his signals and her movements were uncertain. Although Clendenion eventually blew a danger signal and reversed engines, those actions occurred at a point in time where it was no longer possible to avert the collision. Both pilots stubbornly attempted to force an unwanted passing arrangement on the other. The relative recalcitrance of both pilots was, to a lesser degree, a cause of the collision.

6. Thus, in view of the facts, the attendant statutory violations and case law principles, I conclude that the M/V DENNIS HENDRIX was 20% at fault and the M/V RITA was 80% at fault.

A judgment consistent with these findings and conclusions should be prepared and submitted by counsel for M/V DENNIS HENDRIX.